# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

Laura Fielden, individually and on behalf of her
minor child, L.F.-C.

      Plaintiffs,

v.

Michael R. Pompeo, in his official capacity as
Secretary of State, et al.

      Defendants.

Case No. 20-cv-409-EGS

### MEMORANDUM IN SUPPORT OF
### DEFENDANTS' MOTION TO DISMISS

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................... 1

BACKGROUND ................................................................................................................... 4

I. The Constitution confers U.S. citizenship only upon those born within the territorial United States, while the Immigration and Nationality Act ("INA") sets forth the circumstances in which a child born abroad may be eligible for U.S. citizenship. ............ 4

    A. Constitutional and Statutory Framework ....................................................... 4

    B. Administrative Application of Citizenship Provisions ................................. 6

II. Plaintiffs unsuccessfully sought a CRBA from DOS and a Certificate of Citizenship from USCIS . .................................................................................................................. 8

STANDARD OF REVIEW ................................................................................................. 11

ARGUMENT ...................................................................................................................... 11

I. Plaintiffs have failed to state a plausible APA claim. ..................................................... 11

    A. Plaintiffs may not invoke the APA since they have an adequate, alternative legal remedy in section 1503. ........................................................................... 11

    B. Even if Plaintiffs can proceed with their APA claims, the denial of Plaintiffs' citizenship applications by DOS and USCIS is consistent with both sections 1401(g) and 1433. ............................................................................................... 13

II. Plaintiffs have failed to state a substantive due process claim since there is no fundamental, constitutional right to confer or acquire U.S. citizenship when a child is born abroad. ....................................................................................................................... 22

III. Plaintiffs have failed to state an equal protection claim since Defendants' policies with respect to sections 1401(g) and 1433(a) neither facially discriminate, nor are intended to discriminate, against a protected class, and these policies survive rational basis review. 25

CONCLUSION .................................................................................................................... 29

## TABLE OF AUTHORITIES

**Cases**

*Abdelfattah v. U.S. Dep't of Homeland Sec.*, 787 F.3d 524 (D.C. Cir. 2015)............................ 23

*Abigail All. for Better Access to Developmental Drugs v. von Eschenbach*, 495 F.3d 695 (D.C.

Cir. 2007) ....................................................................................................... 25

*Acevedo v. Lynch*, 798 F.3d 1167 (9th Cir. 2015) ........................................................ 20

*Adams Fruit Co. v. Barrett*, 494 U.S. 638 (1990)......................................................... 14

*Adams v. Suozzi*, 448 F. Supp. 2d 448 (E.D.N.Y. 2006) ............................................... 24

*Albright v. Oliver*, 510 U.S. 266 (1994) .................................................................... 24

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)..................................................................... 11

*Boisson v. Pompeo*, No. CV 19-2105 (JDB), 2020 WL 2043889 (D.D.C. Apr. 28, 2020).......... 13

*Chacoty v. Pompeo*, 392 F.Supp.3d 1 (2019) ............................................................. 13

*Colaianni v. I.N.S.*, 490 F.3d 185 (2d Cir. 2007)......................................................... 15

*CREW v. DOJ*, 846 F.3d 1235 (D.C. Cir. 2017).................................................... 11, 12

*Democracy Forward Found. v. White House Office of Am. Innovation*, 356 F. Supp. 3d 61

(D.D.C. 2019) ................................................................................................... 17

*Dir., Office of Workers' Comp. Programs, Dep't of Labor v. Newport News Shipbuilding & Dry*

*Dock Co.*, 514 U.S. 122 (1995).............................................................................. 21

*Fiallo v. Bell*, 430 U.S. 787 (1977)............................................................... 18, 21, 22

*I.N.S. v. Aguirre-Aguirre*, 526 U.S. 415 (1999)........................................................... 20

*In re Bueno-Almonte*, 21 I. & N. Dec. 1029 (1997)...................................................... 19

*Jaen v. Sessions*, 899 F.3d 182 (2d Cir. 2018)............................................................. 8

*Kirtsaeng v. John Wiley & Sons, Inc.*, 568 U.S. 519 (2013)............................................ 15

*L. Xia v. Tillerson*, 865 F.3d 643 (D.C. Cir. 2017). ........................................................ 12

*Matter of Cross*, 26 I. & N. Dec. 485 (BIA 2015) ........................................................... 20

*Matter of Guzman-Gomez*, 24 I. & N. Dec. 824 (BIA 2009) ........................................ 20

*McDowell v. Shinseki*, 23 Vet. App. 207 (2009) ............................................................ 15

*Miller v. Albright*, 523 U.S. 420 (1998) ................................................................... passim

*Pers. Adm'r of Massachusetts v. Feeney*, 442 U.S. 256 (1979) .................................. 26

*Pharm. Research & Manufacturers of Am. v. United States Dep't of Health & Human Servs.*, 43

    F. Supp. 3d 28 (D.D.C. 2014) ....................................................................................... 7

*Reno v. Flores*, 507 U.S. 292 (1993) ............................................................................. 25

*Rogers v. Bellei*, 401 U.S. 815 (1971) ........................................................................... 24

*Rusk v. Cort*, 369 U.S. 367 (1962) ................................................................................. 13

*Sabra as next friend of Baby M v. Pompeo*, No. 19-CV-2090 (EGS), 2020 WL 1643676 (D.D.C.

    Apr. 2, 2020) ................................................................................................................ 18

*Scales v. I.N.S.*, 232 F.3d 1159 (9th Cir. 2000) .............................................................. 8

*Schreiber v. McCament*, 349 F. Supp. 3d 1063 (D. Kan. 2018) ................................... 19

*Scialabba v. Cuellar de Osorio*, 573 U.S. 41 (2014) .............................................. 20, 21

*Skidmore v. Swift & Co.*, 323 U.S. 134 (1944) .............................................................. 17

*Tuan Anh Nguyen v. INS*, 533 U.S. 53 (2001) ......................................................... 22, 25

*U.S. v. Marguet-Pillado*, 560 F.3d 1078 (9th Cir. 2009) .............................................. 15

*U.S. v. Wong Kim Ark*, 169 U.S. 649 (1898). .................................................... 4, 14, 24

*United States v. Johnson*, 40 F.3d 436 (D.C. Cir. 1994) ............................................... 27

*United States v. Mead Corp.*, 533 U.S. 218 (2001) ................................................. 17, 18

*Washington v. Davis*, 426 U.S. 229 (1976) .................................................................... 26

*Washington v. Glucksberg*, 521 U.S. 702 (1997) .................................................................... 23, 24

*Zhang v. Napolitano*, 663 F. Supp. 2d 913 (C.D. Cal. 2009). ..................................................... 21

**Statutes**

22 U.S.C. § 2705 ............................................................................................................................ 6

5 U.S.C. § 706 .............................................................................................................................. 11

8 U.S.C. § 1101 ................................................................................................................... 5, 18, 20

8 U.S.C. § 1103 .............................................................................................................................. 6

8 U.S.C. § 1151 ............................................................................................................................ 20

8 U.S.C. § 1401 ........................................................................................................................ 4, 14

8 U.S.C. § 1409 ........................................................................................................................ 5, 16

8 U.S.C. § 1430 ............................................................................................................................ 21

8 U.S.C. § 1431 ............................................................................................................................ 21

8 U.S.C. § 1433 ..................................................................................................................... 5, 7, 17

8 U.S.C. § 1503 ............................................................................................................................ 12

8 U.S.C. 1104 ................................................................................................................................ 6

INA § 309(a), 66 Stat. 163, 238 (1952) ...................................................................................... 15

**Regulations**

22 CFR § 50.7 ................................................................................................................................ 6

8 CFR § 341.1 ................................................................................................................................ 7

8 CFR § 341.2 ................................................................................................................................ 8

8 CFR § 341.5 ................................................................................................................................ 8

**Other Authorities**

8 FAM 301.10-1 ............................................................................................................................ 8

8 FAM 301.4-1 ............................................................................................ passim

Application for CRBA, Form DS-2029, https://eforms.state.gov/ Forms/ds2029.pdf (accessed May 6, 2020). ...................................................................................... 7

Joint Statement of USCIS and DOS, U.S. Suspends Processing New Nepal Adoption Cases Based on Abandonment (Aug. 6, 2010), https://go.usa.gov/xVpWZ .................................................. 17

Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/ (Accessed 2 May. 2020) ....................................................................................... 14

Oxford English Dictionary, Third Edition (accessed March 24, 2020). ...................................... 14

USCIS Policy Manual, Vol. 12, Part H, Ch. 5 ............................................................ 8

**Introduction**

For over two centuries, U.S. nationality law for those born abroad has generally reflected the principle that a child must have a biological relationship with a U.S. citizen to secure U.S. citizenship. Plaintiffs here, however, assert that a child born abroad who has only a *legal*, but not a biological, relationship with a U.S. citizen parent is nonetheless entitled to U.S. citizenship under two statutory provisions, neither of which expressly deviates from the historical principle that a biological relationship with a U.S. parent is necessary. The Court should dismiss Plaintiffs' claims.

Plaintiff Laura Fielden (a U.S. citizen) resides in Spain with her wife, María Calle Suarez (a Spanish citizen). Fielden's wife gave birth to their daughter, L., in Spain using assisted reproductive technology. Although Fielden is a legal parent of L., she has no biological relationship with L. Shortly after L.'s birth, Fielden filed applications with the Department of State ("DOS") and the U.S. Citizenship and Immigration Services ("USCIS") for documentation indicating that L. is a U.S. citizen. DOS and USCIS, however, denied Fielden's requests, concluding that neither statutory provision Fielden relied upon applies to L. since L. has no biological relationship with a U.S. citizen parent. Fielden brought suit on behalf of herself and L., principally claiming that the denial of her applications by DOS and USCIS was contrary to law in violation of the Administrative Procedure Act ("APA"), deprives Plaintiffs of their substantive due process rights, and deprives Plaintiffs of their right to equal protection of the law.

None of these claims has merit. As a threshold matter, the APA does not provide a cause of action when there is another adequate remedy. The INA provides a cause of action—8 U.S.C. § 1503—through which a party located abroad may generally challenge an adverse citizenship determination by a U.S. agency. Plaintiffs' claims—all challenging an adverse citizenship determination for L.—fall squarely within the scope of section 1503, and thus Plaintiffs cannot

1

evade this remedy by resorting to the APA.

In any event, Plaintiffs' APA claims fail on the merits since neither of the two statutes they rely upon unambiguously applies to children born abroad who have only a legal relationship with a U.S. citizen parent. Plaintiffs first rely on 8 U.S.C. § 1401(g), which confers citizenship on certain children "born . . . of" married parents, one of whom is a U.S. citizen. The text of that provision strongly indicates, however, that the child must be biologically related to both of her parents. And that interpretation is bolstered by the context of the provision—namely, the long tradition of conferring citizenship on those born abroad only if they are descendants of U.S. citizens. At a minimum, the Court should defer to Defendants' reasonable construction, which reflects their expertise in preventing citizenship fraud.

Plaintiffs also rely upon 8 U.S.C. § 1433. This provision allows a parent to secure citizenship for a "child" born abroad if certain conditions are met. The INA defines "child" to include, with certain conditions, "a child legitimated" and "a child adopted in the United States."[1] The Board of Immigration Appeals—whose precedential decisions are entitled to *Chevron* deference—has held that this definition does *not* include any and every child with a legal relationship to a U.S. citizen parent, but rather encompasses a child that is adopted by, or has a biological relationship with, a U.S. citizen parent. USCIS thus takes the position, in line with this precedent, that unless a child is adopted, she must have a biological connection to a U.S. citizen parent to qualify as a "child" within the meaning of the statute. As with § 1401(g), nothing in the text of § 1433 suggests otherwise. Accordingly, since Fielden has not adopted L., and has no biological relationship with L., L. does not qualify for U.S. citizenship under section 1433. Plaintiffs have thus failed to state an APA claim based on sections 1401(g) or 1433.

---

[1] 8 U.S.C. § 1101(c)(1) (defining "child" for purposes of section 1433).

Plaintiffs also assert two constitutional claims. Plaintiffs first assert a substantive due process claim, arguing that U.S. citizens have a fundamental right to confer citizenship upon children with whom they share only a legal, but not biological relationship. The Supreme Court, however, has expressly (and repeatedly) held that the Constitution provides no right to citizenship for those born abroad. Additionally, the Court should not read Plaintiffs' requested right into the due process clause since this right was left out of the Fourteenth Amendment—which, unlike the due process clause, *explicitly* addresses U.S. citizenship.

Plaintiffs also assert an equal protection claim, arguing that the relevant policies of DOS and USCIS—interpreting the relevant INA provisions to include a biological-relationship requirement—deny same-sex couples the right to equal protection of the law. But the relevant policies of both agencies are facially neutral, and draw no distinctions based on the sexual orientation of the parents of a child born abroad. To the extent the policies disproportionately affect same-sex couples, that would not violate the Constitution; rather, Plaintiffs would have to demonstrate that DOS and USCIS *intended* to inflict harm on same-sex couples. But the Complaint contains no well-pled allegation of improper intent, nor could it. The policies of DOS and USCIS, which long predate nationwide recognition of same-sex marriage, affect opposite-sex and same-sex couples alike. If a U.S. citizen man and his non-U.S. citizen wife have a child abroad using a sperm donor, the child would have a biological connection only with her non-U.S. citizen parent, and thus under DOS and USCIS policies would likewise not acquire citizenship under section 1401(g) or under section 1433 (absent adoption).[2] Additionally, an inference of improper motive

---

[2] Note, however, that for parties located in the Second Circuit and Ninth Circuit, USCIS follows relevant case law stating that, in those jurisdictions, a biological relationship between the U.S. citizen parent and child born abroad is not required for a child to acquire citizenship under section 1401(g). *See Jaen v. Sessions*, 899 F.3d 182 (2d Cir. 2018); *Scales v. I.N.S.*, 232 F.3d 1159 (9th Cir. 2000). These cases are not binding on this court, and the government has recently argued that

is especially impermissible here since, in the absence of express statutory text commanding otherwise, DOS and USCIS have simply interpreted the relevant INA provisions in a manner consistent with the long-standing principle that a child born abroad must generally have a biological relationship with a U.S. citizen parent. Accordingly, Plaintiffs have failed to state either a substantive due process or equal protection claim. The Court should grant Defendants' Motion to Dismiss.

## **Background**

I.   **The Constitution confers U.S. citizenship only upon those born within the territorial United States, while the Immigration and Nationality Act ("INA") sets forth the circumstances in which a child born abroad may be eligible for U.S. citizenship.**

   A.   *Constitutional and Statutory Framework*

The Constitution "contemplates two sources of citizenship, and two only[:] birth and naturalization." *U.S. v. Wong Kim Ark*, 169 U.S. 649, 701 (1898). "[C]itizenship by birth is established by the mere fact of birth under the circumstances defined in the constitution," namely, birth "in the United States, and subject to the jurisdiction thereof." *Id.* at 702. "A person born out of the jurisdiction of the United States," however, "can only become a citizen by being naturalized" under "the authority and in the forms of law," including Congressional "enactments conferring citizenship upon foreign-born children of citizens." *Id.* at 702-03. Since 1790, "Congress, by successive acts," provided "for the admission to citizenship of . . . [f]oreign-born children of American citizens" in certain circumstances. *Id.* at 672. These acts reflected "a general rule of citizenship by blood or descent," which did not extend to those born "within [the] sovereignty" of the United States. *Id.* at 674.

---

*Scales* was incorrectly decided. *See* Brief for Appellants, Dvash-Banks v. Dep't of State, No. 19-55517, Docket Entry 15 (9th Cir. Oct. 11, 2019).

Current U.S. law concerning citizenship for those born abroad is found in the INA. Three INA provisions in particular are relevant here. First, 8 U.S.C. § 1401 lists certain categories of persons who "shall be" considered "nationals and citizens of the United States at birth," including:

> [A] person born outside the geographical limits of the United States and its outlying possessions of parents one of whom is an alien, and the other a citizen of the United States who, prior to the birth of such person, was physically present in the United States or its outlying possessions for a period or periods totaling not less than five years, at least two of which were after attaining the age of fourteen years.

8 U.S.C. § 1401(g). To qualify for citizenship under section 1401(g), a person must be born abroad of parents who are married to each other. *See Miller v. Albright*, 523 U.S. 420, 430 (1998) ("§ 1401(g)" applies when "a citizen parent . . . is married to an alien").

Second, unlike section 1401(g), 8 U.S.C. § 1409 confers citizenship on certain persons born abroad "out of wedlock" with at least one U.S. citizen parent. Section 1409's requirements vary depending upon whether a petitioner's claim to citizenship derives from a U.S. citizen father or U.S. citizen mother. Section 1409(a) states that section 1401 will apply to a child born abroad to a U.S. citizen *father* if, among other requirements, "a blood relationship between the person and the father is established by clear and convincing evidence." 8 U.S.C. § 1409(a)(1). Congress instituted this evidentiary requirement "in order to deter fraudulent claims." *Miller*, 523 U.S. at 436. Section 1409(c), by contrast, sets forth the applicable requirements when a petitioner has a U.S. citizen mother. Section 1409(c) applies only if the U.S. citizen mother "had previously been physically present in the United States" for the requisite period of time, but unlike section 1409(a), a petitioner need not establish the mother-child blood relationship "by clear and convincing evidence."

Third, 8 U.S.C. § 1433—instituted by the Child Citizenship Act of 2000—allows a parent to "apply for naturalization on behalf of a child born outside of the United States" if certain

conditions are met, including that "[t]he child is temporarily present in the United States pursuant to a lawful admission, and is maintaining such lawful status." The INA defines "child" for purposes of section 1433 to generally include "a child legitimated under the law of the child's residence or domicile, or under the law of the father's residence or domicile" and "a child adopted in the United States, if . . . the child is in the legal custody of the legitimating or adopting parent or parents at the time of such legitimation or adoption." 8 U.S.C. § 1101(c)(1).

### B.  Administrative Application of Citizenship Provisions

Both DOS and USCIS administer relevant INA citizenship provisions, with DOS responsible for citizenship determinations for individuals located abroad, and USCIS responsible for these determinations for those within the United States. *See* 8 U.S.C. § 1104(a) (DOS administers INA provisions requiring a "determination of nationality of" those living abroad); 8 U.S.C. § 1103(a)(1) ("The Secretary of Homeland Security shall be charged with the administration and enforcement of . . . laws relating to the immigration and naturalization of aliens, except insofar as this chapter or such laws relate to the powers, functions, and duties conferred upon," among others, "the Secretary of State, the officers of the Department of State, or diplomatic or consular officers."). DOS may make a citizenship determination, for example, when a parent of a child born abroad applies for a Consular Report of Birth Abroad of a Citizen of the United States ("CRBA"), a document which serves "as proof of [U.S.] citizenship." 22 U.S.C. § 2705. A DOS consular officer may issue a CRBA if certain conditions are satisfied, including "the submission of satisfactory proof" that the child is indeed entitled to U.S. citizenship under the INA. 22 CFR § 50.7(a).

DOS's Foreign Affairs Manual ("FAM") lays out how its consular officers should interpret and administer relevant INA citizenship provisions. The FAM reiterates that, "[s]ince 1790," one

"prerequisite[] for transmitting U.S. citizenship at birth to children born abroad" is that "[a]t least one biological parent must have been a U.S. citizen when the child was born." 8 FAM 301.4-1(B); *see also* 8 FAM 301.4-1(D)(1)(a) ("The laws on acquisition of U.S. citizenship through a parent have always contemplated the existence of a blood relationship between the child and the parent(s) through whom citizenship is claimed."). Thus, to qualify for citizenship under section 1401(g), "[i]t is not enough that the child is presumed to be the issue of the parents' marriage;" the child must have a "blood relationship" with "the parent whose citizenship the child's own claim is based." 8 FAM 301.4-1(D)(1)(a). A man has a biological relationship with his child "when he has a genetic parental relationship to the child," but "a woman may establish a biological relationship with her child either by virtue of being the genetic mother (the woman whose egg was used in conception) or the gestational mother (the woman who carried and delivered the baby)." 8 FAM 301.4-1(D)(1)(c).

The FAM instructs consular officers, when making a citizenship determination, to "investigate carefully" if "doubt arises" over whether "the U.S. citizen 'parent' is biologically related to the child." 8 FAM 301.4-1(D)(1)(d). The FAM provides a non-exhaustive list of "[c]ircumstances that might give rise to such a doubt," including: (i) "[c]onception or birth of a child when either of the alleged biological parents was married to another person during the relevant period," (ii) "the birth certificate" contains "person[s] other than the alleged biological parents," and (iii) the "child was born through surrogacy or other forms of assisted reproductive technology [("ART")]." *Id.* These factors apply to same-sex and opposite couples alike. The CRBA form asks all applicants for information relevant to these factors, including whether the applicant was "married to the child's other biological parent when the child was born." *See* Application for CRBA, Form DS-2029, https://eforms.state.gov/ Forms/ds2029.pdf (accessed

May 6, 2020).[3] Thus, an opposite-sex couple that uses ART would, under the FAM, be as likely to undergo a careful investigation as an otherwise similarly-situated same-sex couple.

Aside from a CRBA, a parent of a child born abroad may also apply for a certificate of citizenship from USCIS under section 1433, so long as the child is currently "present in the [U.S.] pursuant to a lawful admission." 8 U.S.C. § 1433; *see also* 8 CFR § 341.1. USCIS may issue the certificate of citizenship if certain conditions are met, including that "the claimant, or [her] parent . . . established the claimed citizenship." 8 CFR § 341.2(c); *see also* 8 CFR § 341.5. USCIS's Policy Manual provides guidance on how USCIS interprets relevant INA citizenship provisions, including section 1433, which "is administered exclusively by [USCIS]." 8 FAM 301.10-1(A)(a)(3). The Policy Manual states that section 1433 provides naturalized citizenship to a "*genetic, legitimated, or adopted child*" born abroad if certain conditions are met. USCIS Policy Manual, Vol. 12, Part H, Ch. 5 (emphasis added). Additionally, USCIS has clarified that a child "born abroad through [ART]" may also "be eligible for naturalization under [section 1433] based on a relationship with his or her U.S. citizen *gestational* mother," so long as the gestational mother is "the child's legal parent at the time of the child's birth." *Id.* (emphasis added).

## II.   Plaintiffs unsuccessfully sought a CRBA from DOS and a Certificate of Citizenship from USCIS .

Fielden, a U.S. citizen, is married to María Calle Suarez ("Calle"), a Spanish citizen, and both reside in Spain with their two daughters, M. and L. *See* Compl. ¶ 2. Fielden is the genetic and gestational mother of M., and Calle is the genetic and gestational mother of L. *See id.* ¶ 3. Although Fielden is a legal parent of L., Fielden is not L.'s genetic or gestational mother. *See id.* ¶ 59; *id.*,

---

[3] "Courts in this jurisdiction have frequently taken judicial notice of information posted on official public websites of government agencies." *Pharm. Research & Manufacturers of Am. v. United States Dep't of Health & Human Servs.*, 43 F. Supp. 3d 28, 33 (D.D.C. 2014).

Ex. 6 at 8. In January of 2014, a few months after L. was born, Fielden sought a CRBA for L. from

DOS. *Id.* ¶ 65. DOS denied Fielden's application, concluding that L. "does not qualify for United

States citizenship" under "Section [1401(g)]" since, "regardless of the circumstances of the child's

birth, in order for any U.S. citizen to transmit citizenship to a child born abroad, the U.S. citizen

must establish a biological relationship with the child." Compl., Ex. 4 at 2. DOS's response noted

that Fielden "may consider applying for [her] child's naturalization through [USCIS] in the United

States, via the Child Citizenship Act of 2000, or through the normal immigrant visa process." *Id.*

On June 4, 2015, Fielden "appl[ied] for a Certificate of Citizenship under [section 1433]"

from USCIS. Compl. ¶¶ 74-75. USCIS sent Fielden an initial Notice of Intent to Deny ("First

Notice") on November 8, 2016, stating that L. is ineligible "for issuance of a Certificate of

Citizenship" since she "does not meet the definition of a genetic child to a U.S. citizen parent."

Compl., Ex. 5 at 2-3. The First Notice clarified that a child may also qualify for citizenship under

section 1433 if she has "an adopted parent who is a U.S. citizen" or a U.S. citizen "non-genetic

gestational mother who is recognized" as "the child's legal parent," but Fielden did not contend

that L. satisfied either of these standards. *Id.* at 2.

The First Notice invited Fielden to submit a response, and she did on December 6, 2016.

*See* Compl., Ex. 6. In her response, Fielden largely set forth the arguments she makes in this

litigation, but did "not contest . . . that she is not [L.'s] 'genetic' mother," "that she is not [L.'s]

'non-genetic gestational' mother," and "that she is not [L.'s] adoptive mother." *Id.* at 7. On April

17, 2017, USCIS sent Fielden another Notice of Intent to Deny ("Second Notice"), addressing the

points in Fielden's response letter. *See* Compl., Ex. 7. USCIS did "not contest the fact that

[Fielden] is the legal parent of [L.]," but stated that L. nonetheless does not satisfy the section 1433

requirements since, as Fielden conceded, she is not the "non-genetic gestational mother or natural

mother" of L. *Id.* at 3-4. USCIS also emphasized that "the laws on acquisition of U.S. citizenship through a parent have always contemplated the existence of a blood relationship between the child and parent(s) through whom citizenship is claimed." *Id.* at 4.

Fielden responded to the Second Notice and reiterated her prior arguments. *See* Compl., Ex. 9. Importantly, Fielden "[did] not deny that '[t]he laws on acquisition of U.S. citizenship through a parent have always contemplated the existence of a blood relationship between child and parent.'" *Id.* at 2. USCIS issued its final determination on July 28, 2017, denying Fielden's petition for a Certificate of Citizenship for L. *See* Compl., Ex. 10. Fielden then unsuccessfully appealed USCIS's decision to the USCIS Administrative Appeals Office (AAO). *See* Compl. ¶¶ 93, 99; Compl., Ex. 13 (AAO concludes that Fielden "has not met the burden of proving that she may obtain naturalization on [L.'s] behalf because, although she is [L.'s] legal parent, she is not [L.'s] genetic or gestational mother.").

Fielden brought suit on behalf of herself and L. claiming that DOS's denial of her CRBA application, and USCIS's denial of her certificate of citizenship request, *(i)* are contrary to sections 1401(g) and 1433, respectively, in violation of the APA, *(ii)* deprive Plaintiffs of their substantive due process liberty interests, and *(iii)* impermissibly discriminate against same-sex couples in violation of the equal protection clause.[4] Defendants now move to dismiss.

---

[4] Technically, Plaintiffs assert six total counts (three against DOS and three against USCIS). However, Plaintiffs essentially assert the same three legal theories against each, and thus for the sake of brevity Defendants will address each legal theory once (and will address, where appropriate, any arguments that uniquely apply to only one of the Defendants). Additionally, Plaintiffs name a number of additional defendants, including the Department of Homeland Security, the USCIS AAO, and Attorney General Barr. However, Plaintiffs assert no separate legal theories that apply only to any of these Defendants. Thus, Defendants will only focus on and reference the two principal defendants involved: DOS and USCIS.

## **Standard of Review**

"To survive a [12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). "A pleading that offers labels and conclusions" or "tenders "naked assertion[s]" devoid of "further factual enhancement" is insufficient. *Id.* Further, when assessing whether a Complaint states a plausible claim for relief, allegations "that . . . are no more than conclusions" are "not entitled to the assumption of truth." *Id.* at 679.

## **Argument**

### I.    **Plaintiffs have failed to state a plausible APA claim.**

Under the APA, a court may "hold unlawful and set aside agency action . . . found to be . . . not in accordance with law." 5 U.S.C. § 706(2)(A). Plaintiffs claim that L. is entitled to U.S. citizenship under the terms of either section 1401(g) or section 1433(a), and thus she is entitled to relief against both DOS and USCIS under the APA. Plaintiffs have failed to state a viable APA claim.

   A.    *Plaintiffs may not invoke the APA since they have an adequate, alternative legal remedy in section 1503.*

First, as a threshold matter, the APA's judicial remedy is limited "to agency actions 'for which there is no other adequate remedy in a court.'" *CREW v. DOJ*, 846 F.3d 1235, 1238 (D.C. Cir. 2017) (quoting 5 U.S.C. § 704). This limitation "reflects Congress' judgment that" the APA should not "provide additional judicial remedies" where "Congress has provided special and adequate review procedures." *Id.* at 1244. In determining whether "an alternative remedy is 'adequate,'" courts look to whether there is "legislative intent to create a special, alternative remedy," such as when a statutory scheme creates "both agency obligations and a mechanism for

judicial enforcement." *Id.* at 1244-46. An "alternative remedy need not provide relief *identical* to relief under the APA in order to have preclusive effect." *Id.* at 1245 (emphasis in original).

Here, "[section] 1503 expresses a clear Congressional intent to provide a specific procedure to review" Plaintiff's claim that L. is entitled to U.S. citizenship under sections 1401(g) and 1433(a), and thus "[p]ermitting a cause of action under the APA" would "authoriz[e] an end-run around that process." *Hinojosa v. Horn*, 896 F.3d 305, 312 (5th Cir. 2018), *cert. denied*, 139 S. Ct. 1319, 203 L. Ed. 2d 564 (2019). Subject to exceptions not relevant here, "anyone in the United States who claims a right or privilege as a national of the United States and is denied such right or privilege by any department or independent agency, or official thereof, upon the ground that he is not a national of the United States has a statutory right to claim the benefits of citizenship in a declaratory judgment action under 8 U.S.C. § 1503(a)." *L. Xia v. Tillerson*, 865 F.3d 643, 652 (D.C. Cir. 2017). If a party is located abroad, section 1503 provides a means by which she may seek entry into the U.S. to file a section 1503(a) claim. *See* 8 U.S.C. § 1503(b), (c). First, if she "is denied" a "right or privilege by any" federal agency "upon the ground that [she] is not a national of the [U.S.]," she may generally apply for a certificate of identity, which allows her to travel to a U.S. port of entry and apply for admission. 8 U.S.C. § 1503(b). The certificate must be issued if the "application is made in good faith and has a substantial basis." *Id.* If she receives the certificate, she "may apply for admission to the [U.S.] at any port of entry." 8 U.S.C. § 1503(c). In the event she is denied admission, she may seek "review by any court of competent jurisdiction in habeas corpus proceedings." *Id.* Thus, through section 1503, Plaintiffs may assert their claim that L. is entitled to U.S. citizenship, and potentially secure the precise relief they seek here: "a judgment declaring [L.] to be a national of the United States." *Xia*, 865 F.3d at 652.

Certain decisions of this court have concluded that the remedy in section 1503(b) and (c)

is inadequate, relying almost exclusively on the Supreme Court's decision in *Rusk v. Cort*, 369 U.S. 367 (1962). *See*, *e.g.*, *Chacoty v. Pompeo*, 392 F.Supp.3d 1, 7-12 (D.D.C. 2019); *Boisson v. Pompeo*, No. CV 19-2105 (JDB), 2020 WL 2043889, at *4-6 (D.D.C. Apr. 28, 2020) (relying largely on the reasoning in *Chacoty*). But contrary to the reasoning in these decisions, *Rusk* did not categorically hold that section 1503(b) and (c) may never provide an "adequate remedy" that precludes a plaintiff's APA claim for citizenship. There, the Supreme Court narrowly framed the question in that case as "whether, despite the liberal provisions of the [APA], Congress intended that a native of this country living abroad must travel thousands of miles, be arrested, and go to jail in order to attack an administrative finding that he is not a citizen of the United States." *Rusk*, 369 U.S. at 375. Although, as *Chacoty* noted, the Court stated that "a person outside the United States who has been denied a right of citizenship is not confined to the procedures prescribed by s 360(b) and (c) [the predecessors of section 1503(b) and (c)]," it immediately concluded, more narrowly, "that the remedy pursued *in the present case* was an appropriate one." *Id.* at 379 (emphasis added). Thus, the Court was stating only that a person abroad, depending on her circumstances, is not necessarily precluded from pursuing an APA remedy. Here, unlike in *Rusk*, there is no allegation that the remedy in section 1503(b) and (c) imposes on Plaintiffs the type of hardship necessary to justify a resort to the APA.

Accordingly, section 1503 provides an adequate remedy for the agency actions challenged here, precluding Plaintiff's APA claims.

B.  *Even if Plaintiffs can proceed with their APA claims, the denial of Plaintiffs' citizenship applications by DOS and USCIS is consistent with both sections 1401(g) and 1433.*

The text of sections 1401(g) and 1433 supports Defendants' position that neither provision may confer U.S. citizenship upon L. since L. has no biological relationship with Fielden, her U.S. citizen parent. As an initial matter, to the extent possible, both provisions should be read in a

manner consistent with the historical principles underlying the conferral of citizenship on those born abroad. *See Adams Fruit Co. v. Barrett*, 494 U.S. 638, 642 (1990) ("[W]here the language is not dispositive," courts should look to "the intent of Congress as revealed in the *history and purposes of the statutory scheme*." (emphasis added)). As noted by the Supreme Court, and conceded by Plaintiffs, U.S. nationality law concerning those born abroad has reflected the "general rule of citizenship by blood or descent" since 1790. *Wong Kim Ark*, 169 U.S. at 674; *see also Weedin v. Chin Bow*, 274 U.S. 657, 670 (1927) (at least two Justices noted that, "at common law the children of our citizens born abroad were always natural-born citizens from the standpoint of this government, and that to that extent the *jus sanguinis* [("right of blood")] obtained here"); *supra* at 10 (Plaintiffs expressly note that they do not deny this historical principle). Against this backdrop, the text of sections 1401(g) and 1433 supports Defendants' position that both provisions require a biological connection between a child born abroad and her U.S. citizen parent.

*Section 1401(g).* Section 1401(g) confers citizenship at birth to a child born abroad only if, among other things, the child is "*born . . . of* parents one of whom is . . . a citizen of the United States." 8 U.S.C. § 1401(g) (emphasis added). According to the Oxford English Dictionary, the term "born" means "to be born, come into existence, and the term "of" means "[o]f origin or source," indicating the "person from . . . whom something originates" and "[e]xpressing ancestral or local origin, descent, etc.: . . . be born, be bred, be derived, be propagated, etc." Oxford English Dictionary, Third Edition (accessed March 24, 2020). This definition suggests that one "born of" a parent is a biological descendant of the parent.[5] Additionally, other courts have interpreted the

---

[5] Other dictionary sources support this reading as well. Merriam-Webster's Dictionary, for example, defines "born" to mean "brought forth by or as if by birth," and defines "of" to mean "indicat[ing] origin or derivation." Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/ (Accessed 2 May. 2020).

"born of" language in a similar manner. *See Colaianni v. I.N.S.*, 490 F.3d 185, 187 (2d Cir. 2007) (rejecting argument that the "born . . . of" language in section 1401(c), a companion provision of section 1401(g), does not "impl[y] that biological parentage" is "necessary."); *U.S. v. Marguet-Pillado*, 560 F.3d 1078, 1083 (9th Cir. 2009) ("There can be little doubt that the 'born of' concept generally refers to a blood relationship."); *McDowell v. Shinseki*, 23 Vet. App. 207, 212 (2009) ("'Born of parents' indicates a biological connection between the parents and the child."), *aff'd*, 396 F. App'x 691 (Fed. Cir. 2010).

By contrast, Plaintiffs can refer to no language or binding case law that clearly supports their ahistorical reading: that this provision expansively applies to all children born abroad whose *legal* parents are married, so long as one legal parent is a U.S. citizen. Aside from noting that section 1401(g) could have more explicitly required a biological relationship, Plaintiffs argue only that Congress' use of the phrase "blood relationship" in section 1409(a)(1), but not section 1401(g), must mean that the latter requires no biological relationship. *See* Compl. ¶¶ 47-48. But there is no "canon of interpretation that forbids interpreting different words used in different parts of the same statute to mean roughly the same thing." *Kirtsaeng v. John Wiley & Sons, Inc.*, 568 U.S. 519, 540 (2013). Regardless of what language Congress uses in neighboring provisions, the phrase "born of" still implies a biological relationship. *See supra* at 14-15. Indeed, unlike section 1409(a), section 1409(c)—which applies when a child is born abroad out of wedlock to a U.S. citizen *mother*—does not contain the "blood relationship" language, but Plaintiffs do not dispute that section 1409(c) requires a biological relationship. *See* Compl. ¶ 34 (generally noting that "a biological connection between parent and child is required" when "a child is born *out* of wedlock" under "8 U.S.C. § 1409"); *Miller*, 523 U.S. at 433-34 (noting that section "1409(c) rewards" an "unmarried female['s]" choice "to carry [her] pregnancy to term" and "actually give birth to the

child" by "conferring citizenship on her child").

Further, contrary to Plaintiffs' assertion, section 1409(a)(1) does not use the phrase "blood relationship" to impose a biological relationship requirement where one previously did not exist. When Congress passed the INA in 1952, section 1409(a)'s predecessor did not contain language explicitly requiring a biological relationship. That provision noted that, if certain conditions were met, citizenship may be conferred upon "a child born out of wedlock . . . if the paternity of such child is established while such child is under the age of twenty-one years by legitimation." INA § 309(a), 66 Stat. 163, 238 (1952). The Supreme Court recognized, however, that section 1409(a)'s predecessor required a biological relationship even though—like the current section 1401(g)—it lacked express language to that effect. *See Miller*, 523 U.S. at 435 ("As originally enacted in 1952, § 1409(a)" required that "paternity" be "established . . . by legitimation" as "a means of proving a biological relationship."). Congress later—in 1986—added the relevant "blood relationship" language in a new subsection requiring that "a blood relationship between the person and the father" be "established by clear and convincing evidence." 8 U.S.C. § 1409(a)(1). Thus, Congress's addition of the "blood relationship" language to section 1409(a) did not create a biological relationship requirement where none existed before, but simply set forth the *standard of proof* a petitioner must meet to establish this requirement ("clear and convincing evidence"). Since section 1401(g) does not contain this standard of proof, it is unsurprising that it lacks an analogous clause referring to a "blood relationship."[6]

---

[6] As a separate matter, Plaintiffs' argument independently fails since, when the "born of" language currently found in section 1401(g) was first introduced in 1952, the "blood relationship" language in section 1409(a) did not exist. Thus, section 1409(a)'s "blood relationship" language reveals little of what Congress intended through its use of the language "born of." To the extent section 1409(a) sheds any light on the meaning of section 1401(g), the version of section 1409(a) that is most relevant is the one contemporaneously adopted in 1952—and that provision, like section 1401(g), states a biological relationship requirement implicitly rather than explicitly.

Accordingly, the text and history of section 1401(g) support DOS's interpretation that it requires a biological connection between a child born abroad and a U.S. citizen parent. However, to the extent the Court finds this provision ambiguous, DOS's reasonable construction merits deference under *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944). Under *Skidmore*, DOS's reasonable construction "merit[s] some deference . . . given [its] specialized experience . . . and given the value of uniformity in its administrative and judicial understandings of what a national law requires." *United States v. Mead Corp.*, 533 U.S. 218, 234 (2001). Here, based on its "specialized experience," DOS has concluded that its construction is a practical means to minimize the phenomenon of individuals fraudulently claiming citizenship on behalf of a child who is not actually theirs. In a 2012 memorandum, DOS considered whether it could "interpret the INA to allow U.S. citizen parents to transmit U.S. citizenship to their children born abroad through [ART] in a broader range of circumstances," but it was concerned that any such change would have "serious potential fraud implications" because U.S. consulates "regularly encounter people seeking to document children who are not theirs." Ex. A (memorandum from the Assistant Secretary of State for Consular Affairs to the Secretary of State);[7] *see also* 8 FAM 301.4-1(E) (noting concerns over fraudulent citizenship petitions).

Of course, potential citizenship fraud would extend to circumstances outside the context of ART, and a biological-relationship requirement is not necessarily a failsafe means of preventing fraud in any setting. But because biological relationships can easily and objectively be verified through DNA testing, such a requirement is a powerful way to address concerns about fraud. *Cf.*

---

[7] "The Court can take judicial notice of facts in the public record, such as government documents, if their accuracy can be readily determined from reliable sources." *Democracy Forward Found. v. White House Office of Am. Innovation*, 356 F. Supp. 3d 61, 69 (D.D.C. 2019) (taking judicial notice of a Presidential memorandum).

17

*Fiallo v. Bell*, 430 U.S. 787, 795 n.6 (1977) ("[T]here are widely varying relationships and degrees of kinship, and it is appropriate for Congress to consider not only the nature of these relationships but also problems of identification, administration, and the potential for fraud."). Without it, citizenship claims could be supported merely by documents purporting to show legal relationships between parents and child, and it can be extremely difficult (especially in certain countries) to verify that such documents are genuine and accurate. *See, e.g.*, Joint Statement of USCIS and DOS, U.S. Suspends Processing New Nepal Adoption Cases Based on Abandonment (Aug. 6, 2010), https://go.usa.gov/xVpWZ (explaining that, in Nepal, "[c]ivil documents, such as . . . birth certificates[,] often include data that has been changed or fabricated"). DOS's interpretation of section 1401(g) thus reflects its "specialized experience" in adjudicating thousands of applications for citizenship documents, and the need for standards that can be applied "uniform[ly]" in countries around the world. *Mead*, 533 U.S. at 234. The Court should therefore defer to DOS's interpretation of section 1401(g). And since Plaintiffs do not dispute that L. has no biological relationship with a U.S. citizen parent, DOS properly denied Plaintiffs' CRBA petition.[8]

    *Section 1433.* Plaintiffs also rely upon section 1433, which likewise applies to L. only if

---

[8] The Court recently opined that a biological relationship between U.S. citizen parent and child is not required under section 1401(c), a neighboring provision of section 1401(g). *See Sabra as next friend of Baby M v. Pompeo*, No. 19-CV-2090 (EGS), 2020 WL 1643676, at \*20 (D.D.C. Apr. 2, 2020) ("To the extent the Embassy required [Plaintiffs] to prove a blood or biological relationship . . . such evidence is not required under Section 1401(c)."). But this conclusion was not necessary for the Court's decision in *Sabra* since, unlike the case at bar, the plaintiffs there *were* alleging a "biological relationship between themselves and" the child for whom they sought citizenship. *Id.* at \*8. The Court ultimately found that Plaintiffs were not entitled to relief since they "failed to provide satisfactory proof of . . . birth, identity, and citizenship" for the child. *Id.* at \*11. In any event, the Court's discussion with respect to the biological relationship requirement relied upon cases from the Second and Ninth Circuits. *See id.* at \*20. For the reasons set forth herein, the Court should not follow these non-binding opinions, and should now conclude that section 1401(g) does in fact require a biological relationship between a U.S. citizen parent and child born abroad.

she has a biological connection with Fielden. Section 1433 allows a U.S. citizen parent to seek

naturalized citizenship for a "child" born abroad. 8 U.S.C. § 1433(a). The INA defines "child" to

include, with certain exceptions, "a child legitimated" and "a child adopted in the United States"

if "the child is in the legal custody of the legitimating or adopting parent or parents at the time of

such legitimation or adoption." 8 U.S.C. § 1101(c)(1). USCIS has reasonably interpreted this

language to mean that, unless a child born abroad is adopted—a circumstance not present in this

case—there must be a biological relationship between the child and U.S. citizen parent. This is

consistent with how the Board of Immigration Appeals ("BIA") has interpreted this provision. In

the context of section 1101(b)—which also includes the term "legitimated"—the BIA held that a

person "cannot qualify as a legitimated child of [a] petitioner unless" she "is the petitioner's

biological child." *In re Bueno-Almonte*, 21 I. & N. Dec. 1029, 1032 (1997). The BIA explained:

> "[T]his [biological relationship] requirement is implied by
> the very nature of legitimation. In prior decisions, we have defined
> legitimation as the act of placing a child born out of wedlock in the
> same legal position as a child born in wedlock. A legitimated child
> is, therefore, the biological offspring of unmarried parents, who, by
> some act, has been placed in the same legal position the child would
> have been in if his or her parents had been married at the time of the
> child's birth."

*Id.* at 1031-32 (internal citations omitted); *see also Miller*, 523 U.S. at 435 (section 1409(a)'s

predecessor required "legitimation," which was interpreted to require "a biological relationship");

*Schreiber v. McCament*, 349 F. Supp. 3d 1063, 1077 (D. Kan. 2018) ("Congress intended for the

term 'legitimated' . . . to require a biological connection between the parent and child."), *on appeal*

*as Schreiber v. Cuccinelli*, 18-3215 (10th Cir.). Additionally, the BIA has specifically held that

this interpretation of "legitimated" applies to section 1101(c)(1) (which defines the term "child"

as it is used in section 1433). *See Matter of Cross*, 26 I. & N. Dec. 485, 485 (BIA 2015) ("A person

born out of wedlock may qualify as a legitimated 'child' of his or her biological parents under

19

section 101(c)(1) of the [INA], 8 U.S.C. § 1101(c)(1) (2012) . . . .").

Given its construction of the term "legitimated," the BIA has noted that section 1101(c)'s definition of "child" encompasses an adopted child or a biological child (including a legitimated child born out of wedlock and a biological child born in wedlock). *See Matter of Guzman-Gomez*, 24 I. & N. Dec. 824, 826 (BIA 2009) (suggesting that section 1101(c)(1)'s definition of "child" includes a "biological child" and an "adopted" child); *Acevedo v. Lynch*, 798 F.3d 1167, 1170–71 (9th Cir. 2015) (section 1101(c)(1) does not specifically include a biological "child born in wedlock," but the drafters "surely intended biological children born in wedlock to U.S. Citizens to qualify as 'children' for naturalization purposes."). However, the BIA has made clear that section 1101(c) does *not* "encompass" any and all legal children of parents, such as "stepchildren." *Guzman-Gomez*, 24 I. & N. Dec. at 826. And importantly, the Supreme Court has held that "the BIA should be accorded *Chevron* deference as it gives ambiguous statutory terms concrete meaning through a process of case-by-case adjudication." *I.N.S. v. Aguirre-Aguirre*, 526 U.S. 415, 425 (1999) (internal quotation marks omitted). The Court must "defer to the agency's choice— here, to the [BIA's] expert judgment about which interpretation fits best with, and makes most sense of, the statutory scheme."[9] *Scialabba v. Cuellar de Osorio*, 573 U.S. 41, 57 (2014). Thus,

---

[9] The Court may defer to BIA decisions even though this case does not arise from a BIA decision, or involve the BIA as a party. In *Scialabba*—where the Supreme Court confirmed that "[p]rinciples of *Chevron* deference apply when the BIA interprets the immigration laws"—plaintiffs, like Fielden and L. here, asserted claims against USCIS based on its decision to construe an INA provision in a manner consistent with the interpretation it was given by the BIA in a separate case. 573 U.S. 41, 56. As the district court in *Scialabba* noted: "the only issue is whether the USCIS's decision . . . in these cases [relating to a particular INA provision] runs afoul of the . . . APA," and "the Court finds that Plaintiffs have not carried their burden to show that the USCIS's action in these cases was" unlawful under the APA "and agrees with Defendants that the BIA's decision . . . is entitled to *Chevron* deference." *Zhang v. Napolitano*, 663 F. Supp. 2d 913, 918 (C.D. Cal. 2009). The Supreme Court likewise ruled for USCIS after deferring to the BIA's construction of the relevant provision, noting that "[t]his is the kind of case *Chevron* was built for." *Scialabba*, 573 U.S. at 75.

unless a child born abroad is adopted, section 1433(a) requires a biological relationship between a U.S. citizen parent and the child for whom she is seeking U.S. citizenship. L. does not meet this standard, and so USCIS properly denied Plaintiffs' section 1433 petition.

_Plaintiffs' policy objections._ Finally, unable to ground their APA claims in the text of either provision, Plaintiffs offer two general policy arguments in support of their interpretations of sections 1401(g) and 1433. Plaintiffs first argue that their interpretations promote the INA's goal of "family unity." Compl. ¶ 107. But "the proposition that the statute at hand should be liberally construed to achieve its purposes" is a "losing cause[]," since "[e]very statute proposes, not only to achieve certain ends, but also to achieve them by particular means." _Dir., Office of Workers' Comp. Programs, Dep't of Labor v. Newport News Shipbuilding & Dry Dock Co._, 514 U.S. 122, 135–36 (1995). Indeed, despite its broad policy proclamations, the INA contains a variety of provisions that "hinder reunification of the family in this country." _Fiallo_, 430 U.S. at 797. Here, in sections 1401(g) and 1433, Congress clearly did not intend to freely confer citizenship any time it would facilitate family unity. These provisions lay out specific requirements which reflect multiple competing interests, including Congress' undeniable interest in ensuring a biological connection between a U.S. citizen parent and child born abroad. _See infra_ at 25.

Regardless, there are other avenues through which children may legally reside in the U.S. even though they were born abroad with one U.S. citizen parent to whom they have only a legal relationship, and one non-citizen parent to whom they are biologically related. A child in this circumstance, for example, may apply for lawful permanent resident ("LPR") status by virtue of her relationship to the U.S. citizen parent, who qualifies—through marriage to the child's biological parent—as the child's stepparent for purposes of 8 U.S.C. § 1101(b)(1)(C). Stepchildren qualify as immediate relatives entitled to immigrate without numerical limitation. _See_ 8 U.S.C. §

1151(b)(2)(A)(i). Further, the non-citizen parent may also apply to become an LPR, *see id.*, and if successful, she may then qualify to become a U.S. citizen after residing in the U.S. for three years, *see* 8 U.S.C. § 1430(a). Once the non-citizen parent naturalizes, the child can automatically acquire citizenship through that parent by satisfying the relevant requirements of the Child Citizenship Act. *See* 8 U.S.C. § 1431(a). Thus, the "family unity" policy objective does not justify Plaintiffs' expansive reading of sections 1401(g) or 1433.

Plaintiffs then argue that a biological relationship requirement in sections 1401(g) and 1433 would be illogical, at least here, since L. and M. share the same legal parents, yet only M. may qualify for citizenship under this standard since M. is biologically related to Fielden. *See* Compl. ¶ 84. But there is nothing illogical about differential treatment based on the long-standing principle that a child born abroad generally must have a biological relationship to a U.S. citizen parent to receive U.S. citizenship. *See supra* at 14. Regardless, "[i]n this difficult context of conferring citizenship on vast numbers of persons," no immigration rule can produce results that are uniformly "logical" in each and every case, especially by Plaintiffs' standards. *Tuan Anh Nguyen v. INS*, 533 U.S. 53, 70 (2001). Here, the INA sought to create "an easily administered scheme" for conferring citizenship on those born abroad, *id.* at 69, and although "it could be argued that the line[s] should have been drawn" elsewhere, these are "policy questions entrusted exclusively to the political branches," *Fiallo*, 430 U.S. at 798.

Thus, contrary to Plaintiffs' assertions, sections 1401(g) and 1433 do not unambiguously extend to all children who have only a legal, but not a biological, relationship with a U.S. citizen parent. The Court should dismiss Plaintiffs' APA claims.

**II.    Plaintiffs have failed to state a substantive due process claim since there is no fundamental, constitutional right to confer or acquire U.S. citizenship when a child is born abroad.**

Plaintiffs claim that DOS and USCIS "deprive[d] Plaintiffs of their" federal substantive

due process "rights to acquire and confer citizenship at birth pursuant to "Section [1401(g)]" and

"Section [1433]" by denying Plaintiffs' petitions under those provisions. Compl. ¶¶ 143, 154.

Plaintiffs cannot, however, establish a substantive due process claim by referring simply to a right

created by statute, nor can they establish that the Constitution independently confers their alleged,

novel right.

"The Due Process Clause guarantees" both "fair process" and "heightened protection

against government interference with certain fundamental rights and liberty interests." *Washington

v. Glucksberg*, 521 U.S. 702, 719-20 (1997). However, the Due Process Clause protects only

"fundamental rights and liberties which are, objectively, deeply rooted in this Nation's history and

tradition." *Id.* at 720-21 (internal quotation marks omitted). The Supreme Court has "always been

reluctant to expand the concept of substantive due process because guideposts for responsible

decisionmaking in this unchartered area are scarce and open-ended." *Id.* at 720 (internal quotation

marks omitted). "While the precise threshold for alleging an executive action violates substantive

due process rights is 'unclear,' . . . the bar is high." *Abdelfattah v. U.S. Dep't of Homeland Sec.*,

787 F.3d 524, 542 (D.C. Cir. 2015).

Plaintiffs fail to satisfy this standard. To start, Plaintiffs' theory—that Defendants deprived

Plaintiffs of their *statutory* rights under the INA—overlaps with the merits of their APA claims.

For the reasons set forth above, those claims rely on an incorrect interpretation of the relevant INA

provisions. *See supra* at 13-21. Regardless, the question here is whether Plaintiffs' alleged right is

a "fundamental right[] found to be deeply rooted in our legal tradition," and is thus *independently*

protected by the Constitution. *Glucksberg*, 521 U.S. at 722. An alleged right does not meet this

standard simply because it is conferred by statute. *See*, *e.g.*, *Adams v. Suozzi*, 448 F. Supp. 2d 448,

456 (E.D.N.Y. 2006) (substantive due process "rights are created, not by statute or state law, but by the Constitution and traditional interests that are deeply rooted in this Nation's history and tradition."), *rev'd in part, vacated in part on other grounds*, 517 F.3d 124 (2d Cir. 2008).

Over a century of Supreme Court precedent makes clear that there is no fundamental constitutional right to citizenship with respect to those born outside of the United States. From 1898 onward, the Supreme Court has consistently held that although persons born in the United States (and subject to its jurisdiction) are U.S. citizens as a matter of constitutional right, a "person born out of the jurisdiction of the [U.S.] can *only* become a citizen" by "authority of Congress." *Wong Kim Ark*, 169 U.S. at 702-03 (emphasis added); *see also Miller*, 523 U.S. at 424 ("Persons not born in the United States acquire citizenship by birth only as provided by Acts of Congress."). The Supreme Court has confirmed that Congress thus has the "power . . . *not* to grant a United States citizen the right to transmit citizenship by descent" altogether, and thus it logically also has the power not to grant a U.S. citizen the right to transmit citizenship to a child with whom she has only a *legal* relationship. *Rogers v. Bellei*, 401 U.S. 815, 830 (1971) (emphasis added); *see also id.* at 835 (Congress "ha[s] the power" to "deny [the foreign-born child] citizenship outright"). This conclusion is incompatible with Plaintiffs' claim that Fielden has a *constitutional* right to transmit citizenship to L. Further, courts may not read Plaintiffs' alleged, novel right into the due process clause since this right was specifically left out of the Fourteenth Amendment citizenship clause, which directly speaks to the issue of the right to citizenship. *See Albright v. Oliver*, 510 U.S. 266, 273 (1994) ("Where a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims." (internal quotation marks omitted)). Accordingly, neither Fielden nor L. was deprived of

24

a fundamental, constitutional right when Defendants denied Plaintiffs' section 1401(g) and section 1433(a) citizenship applications.

Because the alleged right of Fielden to transmit citizenship to L. is not a "fundamental" right, the determinations of DOS and USCIS need only "meet the (unexacting) standard of rationally advancing some legitimate governmental purpose." *Reno v. Flores*, 507 U.S. 292, 306 (1993). The Supreme Court has already held that "assuring that a biological parent-child relationship exists" is an "important governmental objective[]." *Nguyen*, 533 U.S. at 62; *see also Miller*, 523 U.S. at 436 ("There is no doubt that ensuring reliable proof of a biological relationship between the potential citizen and its citizen parent is an important governmental objective."). In addition, as noted above, a biological relationship requirement may help address DOS's concerns over fraudulent citizenship applications. And even if the biological relationship requirement renders sections 1401(g) and 1433 unavailable to certain persons with non-fraudulent claims of legal parentage, a "challenged policy need not be in every respect logically consistent with its aims to be constitutional." *Abigail All. for Better Access to Developmental Drugs v. von Eschenbach*, 495 F.3d 695, 712 (D.C. Cir. 2007) (internal quotation marks omitted). Thus, the relevant policies of DOS and USCIS satisfy the rational basis test, and Plaintiffs have therefore failed to state a plausible substantive due process claim against either agency.

**III.** **Plaintiffs have failed to state an equal protection claim since Defendants' policies with respect to sections 1401(g) and 1433(a) neither facially discriminate, nor are intended to discriminate, against a protected class, and these policies survive rational basis review.**

Plaintiffs argue that DOS's reading of section 1401(g) and USCIS's reading of 1433 deny same-sex couples equal protection of the law. A facially "neutral" policy—like the policies at issue here—with a "disproportionately adverse effect upon a" particular class may be set aside as "unconstitutional under the Equal Protection Clause only if that impact can be traced to a

discriminatory purpose." *Pers. Adm'r of Massachusetts v. Feeney*, 442 U.S. 256, 272 (1979). "Discriminatory purpose . . . implies more than intent as volition or intent as awareness of consequences," but rather "implies that the decisionmaker . . . selected or reaffirmed a particular course of action at least in part because of, not merely in spite of, its adverse effects upon an identifiable group." *Id.* at 279 (internal quotations and citations omitted). If Plaintiffs cannot establish a discriminatory motive, the DOS and USCIS policies at issue here are subject only to rational basis review. *See Washington v. Davis*, 426 U.S. 229, 242 (1976) ("Disproportionate impact . . . [s]tanding alone . . . does not trigger the rule . . . that" protected "classifications are to be subjected to the strictest scrutiny and are justifiable only by the weightiest of considerations.").

Here, even assuming that the relevant policies of DOS and USCIS disproportionately affect same-sex couples, there is no well-pled allegation that these policies were adopted "because of" any adverse effect on same-sex couples. To the contrary, the text and history of these policies undermine any suggestion of improper motive. First, these policies, by their terms, may affect same-sex and opposite-sex couples alike. If, for example, an opposite-sex couple is unable to conceive a child and ultimately, through ART, has a child who has a biological relationship only with her non-U.S. citizen parent, then that child—like L.—cannot secure U.S. citizenship under either sections 1401(g) or 1433. Conversely, the child of a same-sex couple may qualify for citizenship under sections 1401(g) or 1433 (or even section 1409, which provides citizenship, at birth, to certain children born abroad regardless of their parents' marital status, *see supra* at 5). If a child is born abroad to a married same-sex couple, and one mother is the gestational parent, and the other mother provided the egg, the child will qualify for citizenship under section 1401(g) if the remaining requirements are satisfied. *See supra* at 7 (the FAM states that both the gestational mother and the mother that provided the egg are considered "biologically related" to the child).

Similarly, if a child born abroad has a biological relationship with a U.S. citizen parent, that child may qualify for citizenship under sections 1433 or 1409, regardless of whether her parents are a same-sex or opposite-sex couple.

Second, the relevant policies of DOS and USCIS are consistent with the long-standing principles of U.S. nationality law, undermining any suggestion that DOS and USCIS were motivated by any discriminatory animus. As stated in *supra* at 14, for over two centuries the biological relationship requirement has been a standard feature of U.S. citizenship law concerning children born abroad. The relevant policies of DOS and USCIS are simply a continuation of that historical principle; the administrative "scheme and [any] resulting disparate impact can be readily and logically explained on grounds other than discriminatory purpose." *United States v. Johnson*, 40 F.3d 436, 441 (D.C. Cir. 1994).

The policies at issue therefore need only satisfy rational basis review. As explained above, the Supreme Court has concluded (at least twice) that the executive branch has a legitimate interest in ensuring a biological relationship between a U.S. citizen parent and a child seeking U.S. citizenship. *See supra* at 25. In addition, Defendants' anti-fraud rationale provides an additional basis for interpreting the relevant INA provisions to include a biological relationship requirement. *See supra* at 17-18.

Finally, Plaintiffs allude to an alternative, as-applied equal protection theory: that DOS "only inquired into the biological relationship between" Fielden and L. "because [L.'s] parents are both women." Compl. ¶ 69; *see also id.* ¶ 109 (alleging that DOS applies the presumption that "[c]hildren born in wedlock" are "the issue of that marriage" only "to the children of heterosexual couples."). But again, there is no support for this conclusory allegation, and it is belied by the FAM's text. The FAM notes that although "[c]hildren born in wedlock are generally presumed to

27

be the issue of that marriage," there are circumstances in which a "consular officer is expected to

investigate carefully." 8 FAM 301.4-1(D)(1)(d). The FAM provides several examples, none of

which reference sexual orientation:

> (1)   Conception or birth of a child when either of the alleged
> biological parents was married to another person during the relevant
> time period;
>
> (2)   Naming on the birth certificate, as father and/or mother,
> person(s) other than the alleged biological parents;
>
> (3)   Evidence or indications that the child was conceived at a time
> when the alleged father had no physical access to the mother;
>
> . . .
>
> (5)   The child was born through surrogacy *or other forms of assisted
> reproductive technology*.[10]

*Id.* (emphasis added). Here, L.'s birth would have fallen into the final example in the list: she was

born through a "form[] of assisted reproductive technology," a factor that applies to children of

same-sex couples and opposite sex couples alike. The Complaint contains no allegation suggesting

that the inquiry into the circumstances of L.'s birth more likely flowed, not from this specifically

enumerated, non-discriminatory factor, but rather from any underlying discriminatory animus on

part of the consular officer. Nor is there any allegation that DOS has systematically opted not to

conduct a careful inquiry when reviewing CRBA petitions from similarly situated opposite-sex

couples that have children using ART. In fact, as noted in *supra* at 7-8, the CRBA form asks *all*

---

[10] Factor four contains a description of the types of evidence a consular officer must consider in
the event that, when the child was conceived or born, the mother was married to a person other
than the man claiming paternity. Factor four indicates that in this instance, "a statement from the
man to whom the mother was married disavowing paternity, a divorce or custody decree
mentioning certain of her children but omitting or specifically excluding the child in question, or
credible statements from neighbors or friends having knowledge of the circumstances leading up
to the birth may be required as evidence bearing on actual natural paternity." 8 FAM 301.4-
1(D)(1)(d).

applicants to identify whether they were married to the child's "other biological parent when the child was born," allowing DOS to apply this factor equally to opposite-sex couples. Accordingly, Plaintiffs have failed to state a plausible facial or as-applied equal protection claim against either DOS or USCIS.

## **Conclusion**

The Court should grant Defendants' Motion to Dismiss.


Dated: May 15, 2020                                    Respectfully submitted,

                                                       JOSEPH H. HUNT
                                                       Assistant Attorney General

                                                       ANTHONY COPPOLINO
                                                       Deputy Branch Director

                                                       */s/* Kuntal Cholera
                                                       KUNTAL CHOLERA
                                                       Trial Attorney
                                                       United States Department of Justice
                                                       Civil Division, Federal Programs Branch
                                                       1100 L, NW Washington, DC 20005
                                                       Tel.: (202) 305-8645
                                                       Fax: (202) 616-8470
                                                       Email: kuntal.cholera@usdoj.gov

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 15, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all users receiving ECF notices for this case.

<u>*/s/* Kuntal Cholera</u>

Kuntal V. Cholera
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, D.C. 20005

Attorney for Defendants