## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

LAURA FIELDEN, individually and on behalf
of her minor child, L.F.-C.,

       Plaintiffs,

   v.

MICHAEL R. POMPEO, in his official
capacity as Secretary of State, *et al.*,

       Defendants.

Civ. No. 1:20-cv-00409-EGS

**HEARING REQUESTED**

## PLAINTIFFS' MEMORANDUM OF LAW IN
## OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ..................................................................................................... iii

INTRODUCTION ................................................................................. 1

LEGAL FRAMEWORK ...................................................................... 3

    A.    The INA Determines Citizenship for Children Born Abroad .......................... 3

    B.    DoS Interprets INA Section 1401(g) to Include a Biological
            Relationship Requirement Where None Exists ................................................. 4

    C.    USCIS Interprets INA Section 1433 to Include a Biological
            Relationship Requirement Where None Exists ................................................. 5

FACTUAL BACKGROUND ................................................................. 6

    A.    The Fielden-Calle Family ................................................................................. 6

    B.    DoS Applies a Biological Relationship Requirement to INA
            Section 1401(g) and Denies L. Her Birthright Citizenship .............................. 7

    C.    USCIS Applies a Biological Relationship Requirement to INA
            Section 1433 and Denies L. Citizenship ......................................................... 8

    D.    The Complaint ................................................................................................. 10

STANDARD OF REVIEW .................................................................. 11

ARGUMENT .......................................................................................... 11

    I.    THE COMPLAINT ADEQUATELY ALLEGES A VIOLATION OF
        THE APA ........................................................................................................ 11

        A.    Plaintiffs' APA Claims Are Justiciable Because 8 U.S.C.
               § 1503 Does Not Provide an Adequate Alternative Legal
               Remedy ..................................................................................................... 12

        B.    The Complaint Adequately Alleges That Defendants Acted
               Unreasonably and Not In Accordance With the Law ...................................... 17

            1.    DoS imports a biological relationship requirement where
                    none exists ........................................................................................... 17

                  a.    The plain language of Section 1401(g) does not
                        include a biological relationship requirement ......................... 17

i

               b.     Case law from this Court and others overwhelmingly supports Plaintiffs' interpretation ................................................. 22

         2.     The Complaint adequately alleges that the USCIS acted unreasonably and not in accordance with the law ............................... 24

         3.     Defendants' interpretations of the INA are not entitled to deference ............................................... 27

         4.     Public policy and the INA's legislative purpose confirms that Defendants acted unreasonably and not in accordance with the law ............................................. 29

II.     THE COMPLAINT ADEQUATELY ALLEGES THAT DEFENDANTS VIOLATED THE DUE PROCESS CLAUSE ................................ 30

     A.     Plaintiffs' Complaint Adequately Alleges the Deprivation of Fundamental Rights .................................. 30

     B.     The Complaint Sufficiently Alleges a Plausible Claim That Defendants' Actions Are Not Narrowly Tailored to Achieve a Compelling Government Interest ...................................... 33

III.    THE COMPLAINT ADEQUATELY ALLEGES A VIOLATION OF THE CONSTITUTIONAL GUARANTEE OF EQUAL PROTECTION UNDER THE LAW .......................................... 37

     A.     Plaintiffs Sufficiently Allege That They Were Subjected to Disparate Treatment ...................................... 37

     B.     Plaintiffs Sufficiently Allege That Defendants Acted With Discriminatory Intent ...................................... 41

CONCLUSION .................................................................. 44

REQUEST FOR HEARING ................................................. 45

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*Acevedo v. Lynch*,
    798 F.3d 1167 (9th Cir. 2015) ...............................................................25

*Alsaidi v. DoS*,
    292 F. Supp. 3d 320 (D.D.C. 2018) .......................................................13

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ................................................................................11

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ................................................................................11

*Bowen v. Massachusetts*,
    487 U.S. 879 (1988) ................................................................................12

*Bradley v. Vox Media, Inc.*,
    320 F. Supp. 3d 178 (D.D.C. 2018) .......................................................39

*In re Bueno-Almonte*,
    21 I. & N. Dec. 1029 (BIA 1997) ..........................................................25

*Chacoty v. Tillerson*,
    285 F. Supp. 3d 293 (D.D.C. 2018) ..................................................15, 16

*Christensen v. Harris Cty.*,
    529 U.S. 576 (2000) ................................................................................28

*Citizens for Responsibility & Ethics in Washington v. U.S. Dep't of Justice*,
    846 F.3d 1235 (D.C. Cir. 2017) .............................................................12

*Citizens United v. FEC*,
    558 U.S. 310 (2010) ................................................................................33

*Colaianni v. I.N.S.*,
    490 F.3d 185 (2d Cir. 2007) ...................................................................19

*Duchesne v. Sugarman*,
    566 F.2d 817 (2d Cir. 1977) ...................................................................32

*Dvash-Banks v. Pompeo*,
    No. CV 18-523-JFW(JCx), 2019 WL 911799 (C.D. Cal. Feb. 21, 2019),
    *appeal docketed*, No. 19-55517 (9th Cir. May 8, 2019)) ..................9, 24

*Farrell v. Tillerson*,
    315 F. Supp. 3d 47 (D.D.C. 2018) ...............................................11, 17, 28

\* Authorities upon which Plaintiffs chiefly rely are marked with an asterisk.

iii

*Fed. Land Bank v. Bismarck Lumber Co.*,
  314 U.S. 95 (1941) ........................................................................................26

*Garcia v. Vilsack*,
  563 F.3d 519 (D.C. Cir. 2009) ....................................................................14

*Gonzalez Boisson v. Pompeo*,
  No. CV 19-2105 (JDB), 2020 WL 2043889 (D.D.C. Apr. 28, 2020) .................13, 14, 15, 16

*Gresham v. Azar*,
  950 F.3d 93 (D.C. Cir. 2020) .......................................................................17

*Gross v. FBL Fin. Servs., Inc.*,
  557 U.S. 167 (2009) ......................................................................................21

*Guyer v. Smith*,
  22 Md. 239 (1864) ........................................................................................29

*Matter of Guzman-Gomez*,
  24 I. & N. Dec. 824 (BIA 2009) ..................................................................25

*Heller v. District of Columbia*,
  670 F.3d 1244 (D.C. Cir. 2011) ...................................................................33

*Hinojosa v. Horn*,
  896 F.3d 305 (5th Cir. 2018), *cert. denied*, 139 S. Ct. 1319 (2019)..................15, 16

*\*Jaen v. Sessions*,
  899 F.3d 182 (2d Cir. 2018)..............................................................20, 21, 28

*Jordan v. Jackson*,
  14 F.3d 333 (4th Cir. 1994) .........................................................................32

*Kingman Park Civic Ass'n v. Gray*,
  27 F. Supp. 3d 171 (D.D.C. 2014) ..............................................................41

*Kiviti v. Pompeo*,
  8:19-cv-02665-TDC (D. Md.).......................................................................23

*Kowal v. MCI Commc'ns Corp.*,
  16 F.3d 1271 (D.C. Cir. 1994) .....................................................................11

*Kucana v. Holder*,
  558 U.S. 233, 130 S. Ct. 827 (2010) ...........................................................19

*L. Xia v. Tillerson*,
  865 F.3d 643 (D.C. Cir. 2017) .....................................................................16

*Masters Pharm., Inc. v. Drug Enforcement Admin.*,
  861 F.3d 206 (D.C. Cir. 2017) .....................................................................26

*McDowell v. Shinseki*,
  23 Vet. App. 207 (2009), *aff'd*, 396 F. App'x 691 (Fed. Cir. 2010) ......................19

iv

*Meyer v. Nebraska,*
    262 U.S. 390 (1923).................................................................................32

*Miller v. Albright,*
    523 U.S. 420 (1998).................................................................................35

*Mize v. Pompeo,*
    1:19-cv-3331-MLB (N.D. Ga.)..................................................................23

*Molina-Aviles v. District of Columbia,*
    824 F. Supp. 2d 4 (D.D.C. 2011)............................................................34

*Nebraska, Dep't of Health & Human Servs. v. U.S. Dep't of Health & Human
    Servs.,*
    340 F. Supp. 2d 1 (D.D.C. 2004)............................................................29

*Negusie v. Holder,*
    555 U.S. 511 (2009).................................................................................29

*Nguyen v. I.N.S.,*
    533 U.S. 53 (2001)...................................................................................35

*\*Obergefell v. Hodges,*
    135 S. Ct. 2584 (2015)..................................................................... *passim*

*\*Pavan v. Smith,*
    137 S. Ct. 2075 (2017)......................................................................31, 32

*Rachel H. v. Dep't of Educ. Hawaii,*
    868 F.3d 1085 (9th Cir. 2017).................................................................19

*Rafeedie v. I.N.S.,*
    880 F.2d 506 (D.C. Cir. 1989).................................................................12

*Reno v. Flores,*
    507 U.S. 292 (1993).................................................................................33

*Rusk v. Cort,*
    396 U.S. 367 (1962), *abrogated on other grounds by Califano v. Sanders,* 430
    U.S. 99 (1977)..........................................................................................16

*Russello v. United States,*
    464 U.S. 16 (1983)...................................................................................20

*\*Sabra as next friend of Baby M. v. Pompeo,*
    No. 19-CV-2090 (EGS), 2020 WL 1643676 (D.D.C. Apr. 2, 2020)......................2, 22, 28, 35

*\*Scales v. I.N.S.,*
    232 F.3d 1159 (9th Cir. 2000)........................................................ *passim*

*Sessions v. Morales-Santana,*
    137 S. Ct. 1678 (2017)...............................................................................4

*Skidmore v. Swift & Co.*,
   323 U.S. 134 (1944) ....................................................................................27

*Solis-Espinoza v. Gonzales*,
   401 F.3d 1090 (9th Cir. 2005) ...............................................................18, 19, 30

*Stanley v. Illinois*,
   405 U.S. 645 (1972) ....................................................................................32

*Stewart v. Gaines*,
   370 F. Supp. 2d 293 (D.D.C. 2005) .................................................................37

*United States v. Marguet-Pillado*,
   560 F.3d 1078 (9th Cir. 2009) ...................................................................18, 20

*United States v. Mead Corp.*,
   533 U.S. 218 (2001) ....................................................................................27

*\*United States v. Windsor*,
   570 U.S. 744 (2013) .................................................................................37, 42

*Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*,
   429 U.S. 252 (1977) ....................................................................................41

*Washington v. Glucksberg*,
   521 U.S. 702 (1997) .................................................................................33, 34

*Weinstein v. Islamic Republic of Iran*,
   175 F. Supp. 2d 13 (D.D.C. 2001) .................................................................39

*Yick Wo v. Hopkins*,
   118 U.S. 356 (1886) ....................................................................................42

**Constitutional Provisions:**

U.S. Const. amend. V, § 1 ....................................................................................30

U.S. Const. amend. XIV, § 1 ..................................................................................3

**Statutes:**

5 U.S.C. § 702 ........................................................................................10, 12

5 U.S.C. § 706(2)(A) ....................................................................................17

8 U.S.C. § 1101(c) .......................................................................................24

8 U.S.C. § 1101(c)(1) ..............................................................................5, 25, 43

8 U.S.C. § 1151(b)(2)(A)(i) .............................................................................30

8 U.S.C. § 1401(c) .......................................................................................22

8 U.S.C. § 1401(g) ...............................................................................*passim*

8 U.S.C. § 1409(a)(1) ................................................................................4, 20

8 U.S.C. § 1431(a) ..........................................................................................................30

8 U.S.C. § 1433..................................................................................................3, 5, 24

8 U.S.C. § 1503(a) ..........................................................................................................13

8 U.S.C. § 1503(b) ..........................................................................................................14

An Act to Amend the Immigration and Nationality Act, and for Other Purposes,
    Pub. L. No. 99-653, 100 Stat. 3655 (1986)...........................................................21

**Code:**

8 C.F.R. § 322.3(b)(ii) ...................................................................................................36

8 C.F.R. § 322.3(b)(iii) ..................................................................................................36

**Rules:**

D.D.C. LCvR 7(n)(1) ......................................................................................................17

Fed. R. Evid. 201(b)(2) ..................................................................................................40

**Legislative Materials:**

*Child Citizenship Act of 2000*, 162 Cong. Rec. H7777 (2000) (statement of Rep.
    Delahunt)..................................................................................................................27

H.R. Rep. No. 106-852 (2000).......................................................................................27

**Other Authorities:**

12 USCIS Policy Manual at pt. G .....................................................................................6

12 USCIS Policy Manual at pt. H...................................................................5, 25, 30, 36

8 FAM § 101.1-2(a) ...........................................................................................................7

8 FAM § 301.10-2(A) .....................................................................................................36

8 FAM § 301.10-3(G) .....................................................................................................36

8 FAM § 301.4-1(D) ..................................................................................................4, 36

8 FAM § 301.4-1(D)(1)(d)........................................................................................38, 39

8 FAM § 301.7-5(b)(2) ...................................................................................................36

8 FAM § 304.1-2(c) ...................................................................................................4, 38

8 FAM § 304.1-4.............................................................................................................36

8 FAM § 304.3-4.............................................................................................................36

Kerry Abrams & R. Kent Piacenti, *Immigration's Family Values*, 100 Va. L. Rev.
    629 (2014)................................................................................................................29

Kristin A. Collins, *Illegitimate Borders: Jus Sanguinis Citizenship and the Legal Construction of Family, Race, and Nation*, 123 Yale L.J. 2134 (2014) ................................29

Compl., *Blixt v. DoS*, 1:18-cv-00124-EGS-RMM (D.D.C. Jan. 22, 2018), ECF No. 1........................................................................................................42

Compl., *Dvash-Banks v. DoS*, No. 2:18-cv-00523-JFW-JCx (C.D. Cal. Jan. 22, 2018), ECF No. 1 .......................................................................................42

Joint Prelim. Report and Disc. Plan, *Mize v. Pompeo*, No. 1:19-cv-3331-MLB (N.D. Ga. Dec. 12, 2019), ECF No. 40......................................................26

May 15, 2019 Minute Order, *Blixt v. DoS*, 1:18-cv-00124-EGS-RMM (D.D.C. May 15, 2019).................................................................................................23

Reply Br. for Appellants, *Dvash-Banks v. DoS*, No. 19-55517 (9th Cir. Feb. 23, 2010), ECF No. 37 ...........................................26

Antonin Scalia & Bryan Garner, *Reading Law: The Interpretation of Legal Texts* (2012)..............................................................................................................26

*Tr. of Status Conference, *Blixt v. DoS*, 1:18-cv-00124-EGS-RMM (D.D.C. May 21, 2019), ECF No. 38 ...............................................................2, 23, 31, 32

USCIS, *N-600K, Application for Citizenship and Issuance of Certificate Under Section 322*, *available at* https://www.uscis.gov/n-600k (last updated Apr. 1, 2020) .............................................................................................................36

USCIS, *Policy Manual for Comment*, uscis.gov/outreach/feedback-opportunities/policy-manual-comment (last visited June 12, 2020)........................................6

## INTRODUCTION

Plaintiff L.F.-C. ("L."), a six-year-old who was born in Spain, has been repeatedly denied her birthright U.S. citizenship solely because she has two mothers, one of whom is a U.S. citizen but not her biological mother, the other of whom is her biological mother but not a U.S. citizen.  Applying for and receiving a Consular Report of Birth Abroad in 2014 should have been a simple task based on the requirements enumerated in the Immigration and Nationality Act ("INA").  Instead, the Department of State ("DoS") denied L.'s application, relying on a discriminatory policy that requires L. and her U.S. citizen mother, Plaintiff Laura Fielden ("Fielden"), to clear an impossible biological relationship hurdle that does not appear in the law.  DoS then suggested that Fielden apply for L.'s naturalization through U.S. Citizenship and Immigration Services ("USCIS"), which Fielden and L. pursued, only to be denied by USCIS and dismissed by the Administrative Appeals Office for the same reason:  lack of a biological relationship.  After years stuck in administrative limbo, Fielden and L. brought this suit.

Defendants[1] agree with Fielden and L. on nearly all of the salient facts.  They seem to agree that Fielden is L.'s legal parent for all purposes other than to confer citizenship under the INA.  They agree that Fielden was married to her wife when L. was born.  They agree that Fielden and her wife both appear as parents on L.'s birth certificate.  And, they acknowledge that

---

[1] Michael R. Pompeo, in his official capacity as Secretary of State; DoS (collectively, "DoS Defendants"); Chad F. Wolf, in his official capacity as Acting Secretary of the U.S. Department of Homeland Security; the U.S. Department of Homeland Security; Kenneth T. Cuccinelli II, in his official capacity as Acting Director of U.S. Citizenship and Immigration Services; U.S. Citizenship and Immigration Services; Barbara Q. Velarde, in her official capacity as Chief of USCIS Administrative Appeals Office; and USCIS Administrative Appeals Office ("AAO") (collectively, "USCIS Defendants"); and William P. Barr, in his official capacity as U.S. Attorney General (collectively, with the DoS Defendants and USCIS Defendants, "Defendants").

based on the advent of Assisted Reproductive Technology ("ART"), same-sex couples enjoy parent-child relationships with children to whom they are not necessarily biologically related.

Defendants' sole basis for denying L. her rightful status as a United States citizen is rooted in their interpretation of the INA based on supposed "long-standing principles" regarding shared blood between parents and children, principles that are notably absent from the statutory text. Indeed, this Court recently joined the Second and Ninth Circuits in rejecting Defendants' position, holding the "plain language of 8 U.S.C. § 1401 does not require proof of a 'biological relationship.'" *Sabra as next friend of Baby M. v. Pompeo*, No. 19-CV-2090 (EGS), 2020 WL 1643676, at *20 (D.D.C. Apr. 2, 2020) (Sullivan, J.); *see also* Tr. of Status Conference at 6, *Blixt v. DoS*, 1:18-cv-00124-EGS-RMM (D.D.C. May 21, 2019), ECF No. 38 ("*Blixt* Tr.") (denying DoS's motion to dismiss in an analogous INA case, where plaintiffs sufficiently pleaded an Administrative Procedures Act ("APA") claim, as well as substantive due process and equal protection claims). Defendants attempt to ignore this Court's prior decisions, concealing *Sabra* in a footnote and ignoring *Blixt* entirely. Instead, they cling to an argument that the INA "implies" or "strongly indicates" a biological relationship requirement that does not appear in the statute. Defendants' flawed interpretation is incorrect, should not be accorded any deference, and provides no basis to dismiss Plaintiffs' APA claims.

Defendants also seek dismissal for: (1) failure to state an APA claim because there is an adequate remedy in 8 U.S.C. § 1503 ("Section 1503"); (2) failure to state a substantive due process claim because there is no fundamental right to confer or acquire U.S. citizenship when a child is born abroad; and (3) failure to state an equal protection claim because there is no facial discrimination or discriminatory intent, and the policies at issue survive rational basis review. Each argument fails. First, Defendants concede that courts in this District disagree with their

suggestion that Section 1503 provides an adequate remedy, but argue that those courts misread Supreme Court precedent.  They have not, and the remedy Defendants point to under Section 1503 is overly narrow and unduly burdensome.  Second, Plaintiffs properly pled that Defendants violated Fielden's fundamental right to marriage by treating L. as if her same-sex parents were not married.  Congress intended for children born abroad within their parents' marriage to be citizens if the U.S. citizen parent meets certain residency requirements, which Defendants agree Fielden meets.  Lastly, Fielden and L. adequately plead that Defendants' interpretation has a disparate impact on same-sex spouses and their children and that Defendants acted with discriminatory intent.  Plaintiffs respectfully request that this Court deny Defendants' motion.

## LEGAL FRAMEWORK

### A.     The INA Determines Citizenship for Children Born Abroad.

The "Citizenship Clause" of the Fourteenth Amendment bestows birthright citizenship upon children born in the United States.  Dkt. 1, Complaint ("Compl.") ¶ 30; U.S. Const. amend. XIV, § 1.  For children born abroad to U.S. citizens, however, Congress set forth certain pathways for citizenship in the INA.  Two of those pathways are relevant here:  INA Section 301(g) (codified at 8 U.S.C. § 1401(g)) (hereinafter "Section 1401(g)") and INA Section 322 (codified at 8 U.S.C. 1433) (hereinafter "Section 1433")).

Under Section 1401(g), the INA recognizes birthright U.S. citizenship for children born abroad; these children are considered U.S. citizens from the moment they are born.  8 U.S.C. § 1401(g).  The DoS administers Section 1401 and relies on its policy guide, the Foreign Affairs Manual (the "FAM"), in making citizenship decisions.

Under Section 1433, certain children born abroad are recognized as U.S. citizens after engaging in the more laborious process of naturalization.  8 U.S.C. § 1433.  USCIS administers

Section 1433 and relies on its own separate policy guide, the USCIS Policy Manual, in doing so. Compl. ¶ 29.   Naturalization confers lesser benefits than birthright citizenship under Section 1401(g).  *See id.* ¶ 38.

### B.   DoS Interprets INA Section 1401(g) to Include a Biological Relationship Requirement Where None Exists.

When a child is born abroad in wedlock (i.e., to a married couple) to a parent who is a U.S. citizen and to a parent who is not a U.S. citizen, that child acquires citizenship under INA Section 1401(g) if the U.S. citizen parent meets enumerated residency requirements.[2]  As explained in the Complaint, Section 1401(g) does not include any requirement that the U.S. citizen parent and child be biologically related.  Compl. ¶ 33.  To be sure, Section 1401(g) does not discuss biology, blood, or genetics at all.  8 U.S.C. § 1401(g).  In contrast, INA Section 1409, which applies to "a person born out of wedlock" (i.e., to a person who is not legally married) outside the United States, requires that "a blood relationship between the person and the [U.S. citizen] father is established by clear and convincing evidence."[3]  8 U.S.C. § 1409(a)(1).

Despite the plain language of Section 1401(g), DoS's FAM states that a child must have a "blood relationship" with her U.S. citizen parent to obtain birthright citizenship under Section 1401.  8 FAM § 301.4-1(D).  Moreover, the FAM defines being born "in wedlock" to require that "the child's *biological parents* were married to each other at the time of the birth of the child."  Compl. ¶ 45 (citing 8 FAM § 304.1-2(c) (emphasis added)).  This unilateral

---

[2] Fielden met these residency requirements, Compl. ¶¶ 66, 80, and Defendants have never held or suggested otherwise.  *See generally id.* at Exs. 4, 5, 7, 8, 10, 12, 13 (Defendants' denials and decisions).

[3] The phrase "in wedlock" does not appear in Section 1401, but courts consistently hold Section 1401 covers children born abroad to married parents, at least in part in contrast with Section 1409, which is entitled "Children born out of wedlock." *See, e.g.*, *Sessions v. Morales-Santana*, 137 S. Ct. 1678, 1686 (2017) (referring to Section 1401(g) as "[a]pplicable to married couples").

declaration is not the product of formal notice-and-comment rulemaking procedures, congressional action, or formal adjudication.  Compl. ¶ 44.  The requirement thereby limits birthright citizenship for children born in wedlock abroad only to children who are biologically related to their U.S. citizen parent.

### C.   USCIS Interprets INA Section 1433 to Include a Biological Relationship Requirement Where None Exists.

INA Section 1433 provides children born abroad a separate path to citizenship through naturalization.  Section 1433 applies if (i) at least one parent is a U.S. citizen who meets certain residency requirements; and (ii) the child is under 18 years, resides outside of the U.S. in legal and physical custody of the applicant parent, and is temporarily present in the United States per lawful admission.  Compl. ¶ 39 (citing INA Section 1433).  "[C]hild," as used in Section 1433, is defined as an:

> unmarried person under twenty-one years of age and includes a child legitimated . . . and . . . a child adopted in the United States, if such legitimation or adoption takes place before the child reaches the age of 16 years . . . and the child is in the legal custody of the legitimating or adopting parent or parents at the time of such legitimation or adoption.

8 U.S.C. § 1101(c)(1).

Neither Section 1433, nor the definition of "child" as used in Section 1433, contains any requirement that a child of a U.S. citizen born in wedlock have a biological relationship with her U.S. citizen parent to be eligible for citizenship through naturalization.  Yet, just like DoS, USCIS imports a biological relationship into the INA.  The USCIS Policy Manual, which outlines specific requirements for "Child[ren] born in Wedlock," limits the definition of "child" to the "genetic, legitimated, or adopted son or daughter of a U.S. citizen; or [t]he son or daughter of a non-genetic gestational U.S. citizen mother who is recognized by the relevant jurisdiction as the child's legal parent."  12 USCIS Policy Manual at pt. H, ch. 2.  The Policy Manual was not

the product of notice-and-comment rulemaking, and therefore does not have binding legal effect. *See* USCIS, *Policy Manual for Comment*, uscis.gov/outreach/feedback-opportunities/policy-manual-comment (last visited June 12, 2020) (explaining that comments on the Policy Manual are "not considered public comments for purposes of notice-and-comment rulemaking").

## FACTUAL BACKGROUND

### A.    The Fielden-Calle Family.

Fielden is a U.S. citizen who was born and raised in the United States, and who lived in the United States for more than 28 years.  Compl. ¶ 55.  After growing up in Missouri and Tennessee, she studied in North Carolina, earning a bachelor's degree from Appalachian State University and a Master of Arts in Romance Languages from the University of North Carolina at Chapel Hill.  *Id.*  Fielden then moved to Spain in May 2006, where she began a romantic relationship with María Calle Suarez ("Calle").  *Id.* ¶¶ 56-57.  Fielden and Calle were legally married in 2011, in Mérida, Spain.[4]  *Id.* ¶ 57.

Following their marriage, Fielden and Calle wanted to have children and entered into a contractual agreement with a fertility clinic in which they memorialized their intent to parent any ensuing children.  *Id.* ¶ 58.  After consulting with several doctors, Fielden and Calle decided that because of concerns about Fielden's reproductive health, Calle would carry the baby.  *Id.* ¶ 59. On November 29, 2013, in Spain, Fielden and Calle were thrilled to welcome their first daughter, L.  *Id.* ¶ 60.  Both Fielden and Calle are listed as parents on L.'s birth certificate, and while Calle provided the egg for insemination and carried (or gestated) L., both Fielden and Calle are and

---

[4] Under the INA, the law of the place where the marriage was celebrated determines legal validity.  12 USCIS Policy Manual at pt. G, ch. 2.  Their marriage is also legally recognized in the United States.  Defendants do not contest the validity of Fielden and Calle's marriage. *See* Compl. ¶ 57; Mem. in Supp. of Defs.' Mot. to Dismiss ("Defs.' Mem.") at 8 ("Fielden, a U.S. citizen, is married to María Calle Suarez.").

always have been L.'s legal parents, sharing all parental rights and responsibilities over their daughter.[5]  *See id.* ¶¶ 61-62.

In 2015, Fielden and Calle celebrated the birth of their second daughter, M.F.-C. ("M.") *Id.* ¶¶ 63-64.  M., like her sister, was born in Spain using ART.  *Id.*  Due to a change in Fielden's medical circumstances, however, Fielden is M.'s genetic and gestational mother.  *Id.* ¶ 64.  As with L., Fielden and Calle are both listed on M.'s birth certificate and are (and always have been) M.'s legal parents.  *Id.*  Yet, within this family of four, Defendants' policies deem one daughter a U.S. citizen at birth (M.) and relegate the other daughter (L.) to the status of a foreign alien.

**B.   DoS Applies a Biological Relationship Requirement to INA Section 1401(g) and Denies L. Her Birthright Citizenship.**

After L. was born, Fielden applied for L.'s U.S. citizenship under Section 1401(g) of the INA.  More specifically, Fielden applied to DoS, through the United States Embassy in Madrid, Spain, for a Consular Report of Birth Abroad ("CRBA") for L., which is a document certifying that a child born abroad to a U.S. citizen parent acquired U.S. citizenship at birth.  *See* Compl. ¶¶ 65-66 (explaining that L. acquired U.S. citizenship at birth pursuant to Section 1401(g) and thus applied for a CRBA as part of what should have been a routine process); 8 FAM § 101.1-2(a).  L. met all of the requirements set forth under INA Section 1401(g):  she was born abroad to married parents, one of whom is a U.S. citizen, and her U.S. citizen parent—Fielden—had

---

[5] As Plaintiffs explained to USCIS, Fielden induced lactation and breastfed L., which created a biological parent-child relationship.  Compl. Ex. 6, at 7 n. 10 (explaining how infants can develop consanguinity ("blood relation") through breastfeeding).  USCIS summarily rejected this explanation and limited "biological" or "genetic" mother-child relationships to those derived from egg, gestation, or both.  *Id.* at Ex. 10, at 3 ("USCIS does not recognize breastfeeding as a means to establish a genetic or biological connection for immigration purposes.").  Because Fielden's relationship to L. is not derived from egg or gestation, Plaintiffs' references to not being "biologically" or "genetically" related assume Defendants' limited definition, for purposes of this Opposition only.

resided in the United States for 28 years, 14 of which were after she obtained the age of 14.  *Id.*

¶ 66.  On or around February 14, 2014, however, DoS sent Plaintiffs a denial letter holding that

L. did not qualify for U.S. citizenship under Section 1401(g).  *Id.* ¶ 67, Ex. 4.  The denial letter

asserted that "regardless of the circumstances of the child's birth, in order for any U.S. citizen to

transmit citizenship to a child born abroad, the U.S. citizen must establish a biological

relationship with the child."[6]  *Id.*  DoS recommended that Fielden consider applying for L.'s

naturalization through USCIS via INA Section 1433 or through the immigrant visa process.  *Id.*

¶ 72 (citing *id.* at Ex. 4, at 1).

**C.    USCIS Applies a Biological Relationship Requirement to INA Section 1433 and Denies L. Citizenship.**

Fielden and Calle strongly disagreed with DoS's decision, but they wanted to obtain L.'s

rightful U.S. citizenship even if it required pursuing citizenship through naturalization.  Thus,

they opted to follow DoS's recommendation of applying for L.'s citizenship through INA

Section 1433.  *Id.* ¶ 74.  That path proved to be fruitless and forced Plaintiffs to endure four

additional years of delay before L.'s U.S. citizenship was again denied.

On or around June 4, 2015, Plaintiffs applied to USCIS for L.'s Certificate of Citizenship

under INA Section 1433.  *Id.* ¶¶ 74-75.  USCIS issued a Notice of Intent to Deny ("NOID")

Plaintiffs' application on or around November 8, 2016, claiming that naturalization applicants

must have a "biological or adopted parent who is a U.S. citizen by birth or naturalization," be the

"genetic, legitimated, or adopted son or daughter [of a U.S. citizen]," or be the "son or daughter

---

[6] In the denial letter, DoS stated that it adjudicated L.'s application under INA Section 1401(g), but it enclosed Section 1409 (the INA provision applicable only to children born *out of* wedlock) as the "Section of Law that refers to this" citizenship requirement.  Defendants no longer contend that Section 1409 should govern the adjudication of L.'s citizenship application and instead argue that Section 1401(g) includes an unwritten biological relationship requirement.

of a non-genetic gestational U.S. citizen mother who is recognized by the relevant jurisdiction as the child's legal parent." *Id.* ¶ 77; *id.* at Ex. 5.  Plaintiffs responded to that NOID on or around December 6, 2016.  *Id.* ¶ 79; *id.* at Ex. 6.  USCIS then sent Plaintiffs a second NOID on or around April 17, 2017, in which USCIS agreed that Fielden is L.'s legal parent but repeated its intent to deny Plaintiffs' application because L. is not Fielden's "genetic child."  *Id.* ¶ 81; *id.* at Ex. 7.  Plaintiffs responded to the second NOID on or around May 15, 2017, *id.* ¶ 83, and USCIS issued a final determination on or around July 28, 2017, denying L.'s application for a Certificate of Citizenship.  *Id.* ¶ 85; *id.* at Ex. 10.

Fielden and L. submitted a Notice of Appeal or Motion (the "Motion") on or around August 28, 2017, asking that USCIS reopen or reconsider its decision.  *Id.* ¶¶ 86-87; *id.* at Ex. 11.  On or around November 9, 2017, USCIS rejected Plaintiffs' Motion, restating the previous grounds for denial, *id.* ¶ 88; *id.* at Ex. 12, and newly likening Fielden and L.'s mother-daughter relationship to that of a step-parent and step-child.  *Id.* ¶ 89, Ex. 12 at 3.

Finally, Fielden and L. appealed the USCIS decision on or around December 4, 2017, to the USCIS Administrative Appeals Office (the "AAO").  *Id.* ¶ 93.  After hearing nothing for over a year, Plaintiffs submitted a Letter of Supplemental Authority informing the AAO of a then-recent federal court decision in *Dvash-Banks*, which held that a child born abroad to married same-sex parents did not need to demonstrate a biological relationship to the U.S. citizen parent under INA Section 1401 to acquire U.S. citizenship at birth.  *Id.* ¶ 97 (citing *Dvash-Banks v. Pompeo*, No. CV 18-523-JFW(JCx), 2019 WL 911799 at *8 (C.D. Cal. Feb. 21, 2019), *appeal docketed*, No. 19-55517 (9th Cir. May 8, 2019)).  On or around October 18, 2019, nearly two years after Plaintiffs submitted their AAO appeal and more than four years after Plaintiffs first applied for a Certificate of Citizenship (at DoS's suggestion), the AAO issued a dismissal,

stating that an applicant must have a genetic, legitimated, or adopted relationship to her U.S. citizen parent to satisfy the definition of "child" under INA Section 101(c)(1).  Compl. ¶¶ 99-100; *id.* at Ex. 13.

      **D.**    **The Complaint.**

On February 12, 2020, Fielden brought suit on behalf of herself and her minor daughter L., explaining that "L. has been a citizen since birth under Section [1401](g)" and that, alternatively, L. is entitled to U.S. citizenship through naturalization under Section 1433. Compl. ¶¶ 4, 74, 87.[7]  The Complaint asserts that L. satisfies both the requirements for U.S. citizenship at birth under Section 1401(g) and for U.S. citizenship through naturalization under Section 1433, but that DoS and USCIS erroneously interpret these provisions to require that L. and Fielden share a biological relationship, in violation of the APA.  *Id.* ¶¶ 114, 127.  The Complaint further asserts that Defendants' refusal to recognize L.'s birthright U.S. citizenship or right to citizenship through naturalization unconstitutionally discriminates against same-sex spouses and their children on the basis of sex and sexual orientation, in violation of the Equal Protection Clause of the Fifth Amendment, and further deprives Plaintiffs of their right to substantive due process under the Fifth Amendment.  *See id.* ¶¶ 138-39, 149-50, 153, 164. Plaintiffs seek a declaration from this Court that L. is a U.S. citizen, a declaration that

---

[7] It is unclear whether Defendants seek dismissal of claims against Defendants other than DoS and USCIS, since they elected to "only focus on and reference the two principal defendants involved:  DOS and USCIS."  Defs.' Mem. at 10 n.4.  To the extent Defendants seek dismissal on this basis, their motion should be denied.  Plaintiffs were required to name these Defendants. *See* 5 U.S.C. § 702 ("The United States may be named as a defendant in any such action, and a judgment or decree may be entered against the United States: *Provided*, That any mandatory or injunctive decree shall specify the Federal officer or officers (by name or by title), and their successors in office, personally responsible for compliance."  (emphasis in original)).  And, the Complaint sufficiently pleads claims as to all named Defendants. *See, e.g.*, Compl. ¶¶ 23-24, 93-101 (describing Defendant AAO and Defendant Velarde's role in upholding USCIS's erroneous decision); *see also id.* at Ex. 13 (AAO dismissal).

Defendants' misinterpretation of INA Sections 1401(g) and 1433 is unconstitutional and unlawful, and an injunction against Defendants' continued erroneous and discriminatory application of Sections 1401(g) and 1433.

## STANDARD OF REVIEW

When ruling on a motion to dismiss for failure to state a claim, the complaint must be construed liberally in the plaintiffs' favor.  *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994).  The Court must "treat the complaint's factual allegations as true and must grant the plaintiff[s] the benefit of all reasonable inferences from the facts alleged."  *Farrell v. Tillerson*, 315 F. Supp. 3d 47, 58 (D.D.C. 2018) (internal quotation marks and alterations omitted).  To survive a Rule 12(b)(6) motion to dismiss, a complaint need only contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).  A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id*. (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

## ARGUMENT

### I.    THE COMPLAINT ADEQUATELY ALLEGES A VIOLATION OF THE APA.

Defendants suggest that Plaintiffs' APA claims fail for two reasons:  first, they argue the claim is not justiciable because Section 1503 provides an adequate alternative remedy at law; and second, they argue Defendants properly interpreted the relevant provisions of the INA and that those interpretations are entitled to deference.  Both arguments are unavailing and contrary to the law in this Circuit.  Plaintiffs do not have an adequate remedy at law.  Requiring Plaintiffs to seek relief using Section 1503 would impose an undue burden on Plaintiffs and preclude the full

relief sought in the Complaint.  Moreover, Defendants' application of the INA is arbitrary, capricious, and not in accordance with the law, as it reads in a requirement that does not exist in the statutory text.

### A.    Plaintiffs' APA Claims Are Justiciable Because 8 U.S.C. § 1503 Does Not Provide an Adequate Alternative Legal Remedy.

Plaintiffs' APA claims must survive because there is no alternative legal remedy. Defendants' suggestion that alternative legal relief exists under Section 1503 is meritless and contrary to the case law in this Circuit—and Defendants know it, conceding that "[c]ertain decisions of this court have concluded that the remedy in [S]ection 1503(b) and (c) is inadequate."  Defs.' Mem. at 12-13.  In fact, those "certain decisions" rely on Supreme Court precedent and are controlling.  Defendants' argument that the Judges in this District misread what the Supreme Court said is unavailing.  *Id*. at 13.  The relief available under Section 1503 is far narrower than the relief sought here, and, in any event, forcing Plaintiffs to travel to the United States to seek relief under Section 1503 would be unduly burdensome and absurd.

The APA allows judicial review of agency action in federal court where "[a] person suffer[s a] legal wrong because of agency action, or [is] adversely affected or aggrieved by agency action."  5 U.S.C. § 702.  Although this judicial review is not unlimited, the central purpose of the APA is to provide "a broad spectrum of judicial review of agency action." *Bowen v. Massachusetts*, 487 U.S. 879, 903 (1988); *see also Citizens for Responsibility & Ethics in Washington v. U.S. Dep't of Justice*, 846 F.3d 1235, 1244 (D.C. Cir. 2017) (quoting *Bowen*, 487 U.S. 879 at 903).  Furthermore, this Circuit recognizes as "apparent from the terms of the APA" that "agency action is presumptively subject to judicial review thereunder."  *Rafeedie v. I.N.S.*, 880 F.2d 506, 510 (D.C. Cir. 1989).

Against this backdrop, a Court evaluating whether an alternative adequate remedy forecloses an APA claim will evaluate:  (1) whether the relief sought is of the "same genre"; (2) whether the alternative relief will "require[] a person to undergo an 'arduous, expensive, and long' process"; (3) whether the alternative remedy results in "a determination of the underlying legal question, rather than a peripheral issue"; and (4) whether there is "clear and convincing evidence of legislative intent to create a special, alternative remedy and thereby bar APA review."  *Gonzalez Boisson v. Pompeo*, No. CV 19-2105 (JDB), 2020 WL 2043889, at *3 (D.D.C. Apr. 28, 2020) (internal citations omitted).  Applying this standard, relief under Section 1503 is a wholly inadequate alternative by every measure—as other courts in this District have consistently found.

First, the relief available under Section 1503 is limited, at most, to a judicial declaration that L. is a U.S. citizen.  *See* 8 U.S.C. § 1503(a) (authorizing certain persons to seek "a judgment declaring [her] to be a national of the United States").  This is substantially narrower than the relief that Plaintiffs seek, which includes a declaration that Defendants' interpretation of the INA is unlawful, as well as an injunction against Defendants' ongoing discriminatory application of Sections 1401(g) and 1433.  At least one court in this Circuit has signaled that the relief provided by Section 1503 is inadequate where plaintiffs seek injunctive relief.  *See Alsaidi v. DoS*, 292 F. Supp. 3d 320, 326-28 (D.D.C. 2018) (explaining that plaintiff "seeks the renewal of her passport and nothing else" and expressly reserving that it "may be" that Section 1503 would be inadequate where a plaintiff requests injunctive or any other form of relief).  Moreover, as discussed below, even if Plaintiffs were to pursue relief under Sections 1503(b) and (c), there is no guarantee that course would prompt a judicial citizenship determination for L., making it

plausible that the relief available would not be of the "same genre." *See Gonzalez Boisson* 2020 WL 2043889, at *3 (quoting *Garcia v. Vilsack*, 563 F.3d 519, 522 (D.C. Cir. 2009)).

Second, the procedures set forth in Section 1503 would impose enormous burdens upon Plaintiffs. Sections 1503(b) and (c) specify the onerous prerequisite processes that individuals residing abroad must complete just to obtain access to Section 1503(a)'s application for a judicial declaration of citizenship. L., by virtue of residing in Spain, would first have to apply at a consulate for a "certificate of identity" allowing her to travel from Spain to a U.S. port of entry in the United States, to then apply for admission. *See* 8 U.S.C. § 1503(b). Section 1503(b) provides that a "certificate of identity" is available "only to a person who at some time prior to [her] application for the certificate of identity has been physically present in the United States, or to a person under sixteen years of age who was <u>born abroad of</u> a United States citizen parent." *See id.* (emphasis added). If DoS improperly reads "born abroad of" as requiring a biological relationship, as it has in relation to Section 1401(g), then it is reasonable to infer that DoS would refuse to even grant L.'s preliminary application for a "certificate for identity" under Section 1503(b). Even if L.'s application were permitted to proceed, L. would still be required to apply for admission at a port of entry under Section 1503(c) just to secure the ability to apply for a citizenship declaration under Section 1503(a). This would require the Fielden-Calle family to relocate to a port of entry for an uncertain amount of time, incur the costs of travel and lodging, and leave behind their home, jobs, and lives in Spain. This burden is even more pronounced in the midst of the current global pandemic where international travel has ground to a halt, and travel to a port of entry would entail considerable risks to Plaintiffs' health and safety.[8]

---

[8] The burdens that Plaintiffs would face under Sections 1503(b) and (c) are of a different magnitude entirely than contemplated by the statute's enactors. Congress' purpose was not to

Third, the alternative remedy Defendants propose does not necessarily lead to judicial review of the underlying legal question, L.'s claim to citizenship.  For instance, if L.'s application for a "certificate of identity" pursuant to Section 1503(b) were denied by a diplomatic or consular officer (a likely outcome based upon Defendants' erroneous reading of L.'s CRBA application under Section 1401(g)), then L. could seek judicial review of the "certificate of identity denial" but not the denial of her citizenship.  *Gonzalez Boisson*, 2020 WL 2043889, at *6 (explaining that under Sections 1503(b) and (c), "[a]ll roads might lead to judicial review, but not all of them lead to a review of [Plaintiff's] citizenship").  Likewise, if L. were denied admission to the United States under Section 1503(c), she could seek review of her admission denial—but not her citizenship denial—in habeas corpus proceedings.  *See id*.  In either instance, if the court determines "certificate of identity" or admissions denials were properly administered, L. would be unable to obtain judicial review of her entitlement to citizenship.

Finally, there is no indication that Congress intended Section 1503 to provide a special, alternative remedy and thereby to bar APA review.  To the contrary, courts in this Circuit have expressly determined that Section 1503 is *not* intended as an exclusive remedy for persons residing outside of the United States (and thereby is *not* a bar to APA review).[9]  As the court in

require Plaintiffs living abroad to come to the United States to apply for a declaration of citizenship, but rather to prevent abuse by individuals attempting "to gain fraudulent entry to the United States by prosecuting spurious citizenship claims."  *Chacoty v. Tillerson*, 285 F. Supp. 3d 293, 303 (D.D.C. 2018) (internal quotation marks omitted).

[9]  In the face of this Circuit's precedent, Defendants point to the Fifth Circuit's finding in *Hinojosa v. Horn*, that Sections 1503(b) and (c) could serve as an adequate alternative remedy to APA claims.  Defs.' Mem. at 12 (citing 896 F.3d 305, 312 (5th Cir. 2018), *cert. denied*, 139 S. Ct. 1319 (2019)).  This Court should decline to follow that decision, which according to the *Hinojosa* court, was the product of a "case-specific evaluation" that accounted for the fact that Plaintiffs lived in Mexico near the U.S.-Mexico border, were seeking to enter the United States,

*Gonzalez Boisson* explained, "a person outside the United States who has been denied a right of citizenship is not confined to the procedures prescribed by [§ 1503(b) and (c)]."  2020 WL 2043889, at *4 (further noting that the Supreme Court in *Rusk v. Cort* held that the language in Section 1503 "shows no intention to provide an exclusive remedy" or to "den[y] existing remedies like APA review" (internal quotation marks omitted) (alterations in original)); *see also Chacoty*, 285 F. Supp. 3d at 302-03 (holding Section 1503 is not an exclusive remedy when plaintiffs brought APA claims challenging defendants' denial of their citizenship applications under Section 1401(g) and explaining that *L. Xia v. Tillerson*, 865 F.3d 643 (D.C. Cir. 2017) did not hold otherwise).

Defendants' only response to this abundant case law is that the Supreme Court's holding in *Rusk* "did not categorically hold that section 1503(b) and (c) may never provide an 'adequate remedy' that precludes a plaintiff's APA claim for citizenship."  Defs.' Mem. at 13.  Defendants attempt to narrowly frame the relevant inquiry in *Rusk* as whether "despite the liberal provisions of the [APA], Congress intended that a native of this country living abroad must travel thousands of miles, be arrested, and go to jail in order to attack an administrative finding that he is not a citizen of the United States."  *Rusk v. Cort*, 396 U.S. 367, 375 (1962), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977).  What Defendants fail to mention is that the Court held that "Congress did not intend to foreclose lawsuits by claimants . . . *who do not try to gain entry to the United States* before prevailing in their claims to citizenship."  *Id.* at 379 (emphasis added).  Plaintiffs fall squarely within this category of claimants.

---

were seeking U.S. passports (and not broader relief), and would not face other serious obstacles if required to proceed under Sections 1503(b) and (c).  *Hinojosa*, 896 F.3d at 310.  As discussed above, the burdens and obstacles that Fielden and L. would face in pursuing relief under Section 1503 are materially distinct from the *Hinojosa* plaintiffs.

Accordingly, Section 1503 is not an adequate alternative remedy and therefore does not preclude Plaintiffs' APA claims.

> **B.      The Complaint Adequately Alleges That Defendants Acted Unreasonably and Not In Accordance With the Law.**

Under the APA, agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law" must be set aside.[10]  *Gresham v. Azar*, 950 F.3d 93, 99 (D.C. Cir. 2020) (quoting 5 U.S.C. § 706(2)(A)).   Here, the Complaint adequately pleads that Defendants' interpretations of the INA in the FAM and USCIS Policy Manual are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law" and must fail APA review.[11]  Moreover, neither the FAM nor the USCIS is entitled to any form of deference.

> **1.      DoS imports a biological relationship requirement where none exists.**

> > **a.      *The plain language of Section 1401(g) does not include a biological relationship requirement.***

Defendants search in vain to justify their tortured reading of Section 1401(g), relying on what they think the statute "indicates," Defs.' Mem. at 2, and "implies," *id.* at 15, instead of what the law actually says.  Simply put, the plain language and reading of Section 1401(g) contains no

---

[10]  Pursuant to Local Civil Rule 7(n)(1), "[i]n cases involving the judicial review of administrative agency actions, unless otherwise ordered by the Court, the agency must filed a certified list of the contents of the administrative record with the Court within 30 days following service of the answer to the complaint or *simultaneously with the filing of a dispositive motion*, whichever occurs first."   D.D.C. LCvR 7(n)(1) (emphasis added).   Defendants filed their dispositive motion to dismiss on May 15, 2020, but have not filed the required index or produced the administrative record to Plaintiffs and refused to do so upon Plaintiffs' request.

[11]  Because Defendants' interpretation of the INA is unbound from the statutory text, Defendants failed to engage in "reasoned decisionmaking."   *Farrell*, 315 F. Supp. 3d at 69 (internal quotation marks omitted).   Plaintiffs adequately plead that the Defendants failed in reasoned decisionmaking, *see* Compl. ¶¶ 11, 33, 40, 101, 106-107, and the Court should deny Defendants' Motion to Dismiss for this additional reason.  *Farrell*, 315 F. Supp. 3d at 68-69.

mention of a biological requirement between children and their parents. Defendants' argument thus fails, and their Motion to Dismiss should be denied.

Starting with the text of the statute, Section 1401(g) provides that "a person born outside the geographical limits of the United States and its outlying possessions of parents one of whom is an alien, and the other a citizen of the United States who" meets relevant residency requirements shall acquire U.S. citizenship at birth. 8 U.S.C. § 1401(g). Section 1401(g) does not require *any* biological relationship between the child and either of the child's married parents, as long as the child is born in wedlock. Compl. ¶ 33. And Section 1401(g) does not require couples to be opposite sex or heterosexual in order to confer citizenship to marital children abroad. *Id.*

Defendants' argument that the language "*born . . . of*" in Section 1401(g) necessarily implies a biological relationship between child and parent is meritless and plainly wrong. Defs.' Mem. at 14-15. As a threshold matter, Defendants' argument relies on case law that is directly contrary to their argument. *See id.* at 14. Defendants cite to *United States v. Marguet-Pillado*, 560 F.3d 1078 (9th Cir. 2009) to support their argument that the words "born" and "of parents" in Section 1401 refer to a biological relationship. There, the court's analysis involved a child born *out of wedlock*, and the court explicitly recognized, pursuant to the court's decisions in *Scales v. I.N.S.,* 232 F.3d 1159, 1166 (9th Cir. 2000) and *Solis-Espinoza v. Gonzales*, 401 F.3d 1090, 1093-94 (9th Cir. 2005), "that when a child is born during a marriage and at least one parent is a United States citizen, *a blood relationship is not absolutely required*."[12]  *Marguet-*

---

[12] The remaining case law cited by Defendants is similarly unpersuasive. In *Colaianni v. I.N.S.*, the Second Circuit considered whether an adult born in Canada and convicted of robbery in the U.S. could avoid deportation by applying for U.S. citizenship as an adult, where he claimed that by being adopted by U.S. citizens as a child, he retroactively acquired citizenship from them "at

*Pillado*, 560 F.3d at 1083 (emphasis added) (citing *Scales*, 232 F.3d at 1166 and *Solis-Espinoza*, 401 F.3d at 1093).

Defendants' reliance upon dictionary definitions of "born" and "of" to support their analysis is further misplaced, as selective dictionary definitions are not appropriate substitutes for the meaning of a term or phrase in its statutory context. *See* Defs.' Mem. at 20. *See also Kucana v. Holder*, 558 U.S. 233, 130 S. Ct. 827, 828-29 (2010) ("The word 'under' "has many dictionary definitions and must draw its meaning from its context." (internal quotation marks omitted)); *Rachel H. v. Dep't of Educ. Hawaii*, 868 F.3d 1085, 1089 (9th Cir. 2017) ("[T]he ordinary dictionary definitions of the term 'location' do not reveal what Congress intended by the term in this context.").

Instead of implying a biological connection, the words "born" and "of" draw a familial connection between a child and her married parents. Here, as properly alleged, L. was "born . . . of" Fielden and Calle, who entered into an agreement with the fertility clinic to proceed with ART as the intended parents. *See* Compl. ¶¶ 58-59. Both mothers participated in the ART process, became parents by virtue of L.'s birth, and have legal obligations to provide for L.'s well-being. *Id.* ¶¶ 58-62. Section 1401(g) does not require that a parent transmit their DNA to their offspring in order for that child to be "born of" them. In fact, L. *was not* "born of"

---

birth." 490 F.3d 185, 186-87 (2d Cir. 2007). It is undisputed that L. was Fielden's daughter "at birth." And, in *McDowell v. Shinseki*, the court analyzed whether plaintiff had provided proof of a father-son relationship, sufficient to entitle plaintiff to receive Veterans Affairs benefits from a deceased, unmarried man who listed no dependents in his VA claims file. *McDowell v. Shinseki*, 23 Vet. App. 207, 212-13 (2009), *aff'd*, 396 F. App'x 691 (Fed. Cir. 2010) ("We are not holding, of course, that there are no means by which a child who is not biologically related is eligible to receive VA benefits; rather, our holding relates only to the 'illegitimate child' provision of § 3.210(b).").

the anonymous sperm donor, who expressly disclaimed rights over any resulting child, despite their shared genetic material.

Section 1401(g) also does not define "parent" to require a biological relationship, and has not been interpreted to require a biological connection.  As explained by the Second Circuit, the INA, which does not expressly define "parent" as used in Section 1401(g), incorporates the fundamental common law principle that "a child born into a lawful marriage is the lawful child of those parents, regardless of the existence or nonexistence of any biological link."  *See Jaen v. Sessions*, 899 F.3d 182, 185, 187-88 (2d Cir. 2018) (internal quotation marks omitted) ("[A]ny apparent ambiguity [concerning the term 'parent'] is foreclosed" because it is evident "that Congress means to incorporate the . . . longstanding presumption of parentage based on marriage."); *see also Marguet-Pillado*, 560 F.3d at 1083 (recognizing that the "erosion" of a biological requirement when a child is born during a marriage to at least one U.S. citizen parent is "a reflection of the tradition that a man is considered to be the natural father of a child born during wedlock").  Defendants do not contest that Fielden is and always has been L.'s legal parent, Defs.' Mem. at 8, and provide no support for interpreting "parent" in Section 1401(g) to exclude legal parents like Fielden.

In contrast to Section 1401(g)'s silence on a biological relationship requirement, Section 1409 explicitly states that a "person born out of wedlock" is a citizen only if, among other things, "a blood relationship between the person and the [U.S. citizen] father is established by clear and convincing evidence."  8 U.S.C. § 1409(a)(1).  The contrast between the inclusion of a biological requirement in Section 1409 and its absence in Section 1401 shows that Congress intentionally excluded a biological requirement in Section 1401.  *Russello v. United States*, 464 U.S. 16, 23 (1983) ("Where Congress includes particular language in one section of a statute but omits it in

another section of the same Act, it is generally presumed that Congress acts intentionally and purposefully in the disparate inclusion or exclusion." (internal quotation marks omitted)).  The Second Circuit and the Ninth Circuit agree:  "[T]he textual distinction between the sections regarding children of married persons and children of unmarried parents is strongly suggestive of a clear Congressional intent to treat the two categories differently on this point." *Jaen*, 899 F.3d at 189 (internal quotation marks omitted); *see also Scales*, 232 F.3d at 1164 (stating in relation to Section 1409's "blood relationship" requirement, "[i]f Congress had wanted to ensure the same about a person born in wedlock, it knew how to do so" (internal quotation marks omitted)).

Defendants seek to explain away this contrast by claiming a "blood relationship" requirement has always existed in both Sections 1401 and 1409, and that Congress merely added the "blood relationship" language in Section 1409 as a standard of proof, as opposed to a distinct requirement.  Defs.' Mem. at 15-16.  Defendants' interpretation is unsupported by any case law, and does not explain why Congress did not also concurrently, or subsequently, modify Section 1401 to also include a parallel standard of proof.  At the same time Congress amended Section 1409 to add an explicit blood relationship, it also made changes to Section 1401, further suggesting that Congress only intended to require a "blood relationship" where it said so explicitly.  *See* An Act to Amend the Immigration and Nationality Act, and for Other Purposes, Pub. L. No. 99-653, § 12-13, 100 Stat. 3655 (1986) (shortening the residency requirement in Section 1401 from between five and ten years to between two and five years and requiring a "blood relationship" in Section 1409); *see also Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 175-76 (2009) (explaining the "negative implications raised by disparate provisions are strongest where the provisions were considered simultaneously when the language raising the implication

was inserted." (internal quotation marks omitted)).  Here, the simplest explanation is the correct explanation:  an analogous "blood relationship" requirement in Section 1401 does not exist.

> **b.**    ***Case law from this Court and others overwhelmingly supports Plaintiffs' interpretation.***

Not only does Defendants' position ignore the INA's plain language, statutory construction, and the INA's statutory purpose of promoting family unity; it also ignores the recent decision of this Court answering this exact question.  This Court has considered the question of whether Section 1401 includes a biological relationship requirement, and indicated that it does not.  Just over two months ago, this Court expressly rejected DoS's imposition of a biological relationship requirement into 8 U.S.C. § 1401(c), which sets forth the conditions for citizenship for a "person born outside the United States . . . of parents both of whom are citizens of the United States," and contains the same "born . . . of" language as Section 1401(g).  *See Sabra as next friend of Baby M.*, 2020 WL 1643676, at *2, 19-20.  This Court rejected DoS's same misconstruction of "born . . . of" as requiring a biological relationship that it again argues here, and held that the "plain language of 8 U.S.C. § 1401 does not require proof of a 'biological relationship' between the child born abroad to married U.S. citizen parents."  *Id.* at *19-20 (invoking both the Second Circuit's holding in *Jaen* and the Ninth Circuit's holding in *Scales* that Section 1401(g) does not include a biological relationship requirement as support for the determination that the same reading applies to Section 1401(c)).  This Court further explained that "the historical underpinnings of the FAM do not persuade this Court that Section 1401(c) requires proof of a biological relationship."  *Id.*  Amazingly, Defendants bury their discussion of *Sabra* in a footnote, arguing only that the Court's conclusion there was not "necessary" to the decision and relied upon non-binding Second and Ninth Circuit precedent.  Defs.' Mem. at 18

22

n.8.  Defendants offer no basis (because none exists) for the Court to depart from its reasoning in *Sabra*, and that reasoning should apply with equal force here.

Prior to *Sabra*, this Court also denied DoS's motion to dismiss a case with facts and legal positions strikingly similar to this one.  *See* May 15, 2019 Minute Order, *Blixt v. DoS*, 1:18-cv-00124-EGS-RMM (D.D.C. May 15, 2019) ("*Blixt*") (Sullivan, J.).  In *Blixt*, plaintiffs challenged DoS's denial of a child's citizenship at birth under Section 1401(g), where child was born abroad to married same-sex parents, one of whom is a U.S. citizen but not a biological parent, the other of whom is a biological parent but not a U.S. citizen.  *See, e.g.*, Compl. ¶ 1-3.  Like here, the crux of *Blixt* was whether Section 1401(g) contains a biological relationship requirement, and this Court expressed that DoS's position "is completely wrong here."  Tr. of Status Conference at 6, *Blixt* (May 21, 2019), ECF No 38.  The Court also commented on the absence of authority for the FAM's biological relationship requirement, and recognized that it was insufficient for DoS to argue that the FAM is appropriate simply because "it's always been that way" (for "at least 20 years").  *Id*. at 34.  Defendants do not address, or even reference, *Blixt* in their Memorandum in Support of their Motion to Dismiss.

Courts outside this circuit have reached the same conclusion, recognizing that a "straightforward reading" of Section 1401 prompts the conclusion that "[t]here is no requirement of a blood relationship."[13]  *Scales*, 232 F. 3d at 1164.  One court recently applied these holdings to find that a biological relationship is not required for birthright citizenship under Section 1401(g) where, as here, a child born abroad in wedlock to same-sex parents does not have a

---

[13] Two additional cases against DoS are pending regarding whether Section 1401 requires a biological relationship for a child born abroad via surrogacy, to same-sex spouses who are both U.S. citizens.  *Kiviti v. Pompeo*, 8:19-cv-02665-TDC (D. Md.) (motion to dismiss and partial motion for summary judgment pending); *Mize v. Pompeo*, 1:19-cv-3331-MLB (N.D. Ga.) (same).

biological relationship with his U.S. citizen parent.  *See Dvash-Banks*, 2019 WL 911799, at \*7.
In the face of this body of case law, Defendants cite to no cases holding that Section 1401(g)
*does* include a biological relationship requirement—because it does not.

Plaintiffs' allegations more than adequately allege that Defendants' application of Section
1401(g) is patently unreasonable and not in accordance with the law.

> **2.    The Complaint adequately alleges that the USCIS acted unreasonably
> and not in accordance with the law.**

Like DoS, USCIS has acted in a manner that is "arbitrary, capricious, an abuse of
discretion, or otherwise not in accordance with the law" by improperly importing a biological
requirement into Section 1433.  USCIS disregards the actual statutory text and instead relies on
its Policy Manual as the sole authority of this biological requirement.  There is no basis for this
requirement.

Section 1433 permits a "child" born abroad who did not acquire citizenship automatically
at birth to become a naturalized citizen so long as at least one parent is a citizen of the United
States and certain conditions (such as age and residency requirements) are met.  8 U.S.C. § 1433.
The text of Section 1433 does not reference a biological requirement between the child and the
U.S. citizen parent.  *See* 8 U.S.C. § 1433; 8 U.S.C. § 1101(c); *see also* Compl. ¶¶ 39-40.  For that
reason alone, Defendants' interpretation of INA Section 1433 fails.

Faced with the plain text of Section 1433, Defendants import their desired biological
requirement through a flawed interpretation of the word "child."  Defs.' Mem. at 19-20.  The
INA defines "child" as used in Section 1433 as:

> an unmarried person under twenty-one years of age and includes a child
> legitimated under the law of the child's residence or domicile . . . [and] a
> child adopted in the United States, if such legitimation or adoption takes
> place before the child reaches the age of 16 years . . . and the child is in

the legal custody of the legitimating or adopting parent or parents at the time of such legitimation or adoption.

8 U.S.C. § 1101(c)(1).  Again, this text does not require a biological relationship between parent and child.  Compl. ¶ 101.  Notwithstanding, USCIS's Policy Manual defines "child" as requiring an adoptive, legitimated, genetic, or gestational relationship with a U.S. citizen parent.  12 USCIS Policy Manual at pt. H, ch. 2.

Defendants suggest that a biological relationship is implicitly required for all non-adopted children born abroad because the Board of Immigration Appeals ("BIA") interprets "legitimated" child under 8 U.S.C. § 1101(b) and 1101(c) to require a biological relationship, and because the BIA does not consider a step-child as a "child" under Section 1101(c).  Defs.' Mem. at 18-20.  BIA's interpretation of "legitimated," however, has no bearing on this matter.  "Legitimation" is a separate process by which children born out of wedlock are placed in the same legal position as children born in wedlock.  *See In re Bueno-Almonte*, 21 I. & N. Dec. 1029, 1031-32 (BIA 1997).  L. need not and could not be legitimated:  she was born in wedlock to Fielden and Calle, a fact Defendants do not dispute.

The cases cited by Defendants are not instructive, as they only address whether step-parents can extend their citizenship.  Defendants suggest *Matter of Guzman-Gomez* limits the definition of child to "biological" or "adopted" children, but that case only addresses whether a U.S. citizen stepfather can extend his citizenship to a child born abroad to his wife prior to his marriage—a clearly distinct situation.  24 I. & N. Dec. 824, 829 (BIA 2009).  As for *Acevedo v. Lynch*, the Ninth Circuit noted the facts were "indistinguishable" from *Guzman-Gomez*, which are entirely distinguishable here.  798 F.3d 1167, 1170 (9th Cir. 2015).

There is also no evidence that Congress intended "legitimated" and "adopted" children to constitute the complete universe of children contemplated under Section 1101(c).  Section

1101(c) sets forth non-exhaustive examples of parent-child relationships that are encompassed by the definition of "child," and does not require that a child fit squarely into one of those slots. "[I]t is well established that the word 'include' often precedes a list of 'illustrative' examples, rather than an exclusive list." *Masters Pharm., Inc. v. Drug Enforcement Admin.*, 861 F.3d 206, 221 (D.C. Cir. 2017) (quoting *Fed. Land Bank v. Bismarck Lumber Co.*, 314 U.S. 95, 99-100 (1941)); *see also* Antonin Scalia & Bryan Garner, *Reading Law:  The Interpretation of Legal Texts* 132 (2012) ("The verb *to include* introduces examples, not an exclusive list.")).  A child who shares no genetics with her legal parent undoubtedly fits within "child" as contemplated by Congress under the INA.

It is telling that even DoS appears to disagree with USCIS's extra-textual interpretation of Section 1433; it not only advised that L. seek citizenship through naturalization in L.'s CRBA denial, Compl. ¶ 72; *id.* at Ex. 4, but also explicitly argued in ongoing litigation pertaining to the citizenship of similarly-situated plaintiffs under Section 1401(g) that "[i]n any event, a different provision of the Child Citizenship Act, 8 U.S.C. § 1433, provides a route to citizenship for children born outside the United States who continue to reside outside the United States."  Reply Br. for Appellants at 20 n.8, *Dvash-Banks v. DoS*, No. 19-55517 (9th Cir. Feb. 23, 2010), ECF No. 37 (decision pending); *see also* Joint Prelim. Report and Disc. Plan at 19, *Mize v. Pompeo*, No. 1:19-cv-3331-MLB (N.D. Ga. Dec. 12, 2019), ECF No. 40 (DoS "assert[s] that Plaintiffs retain the option of pursuing [the child's] U.S. citizenship pursuant to the Child Citizenship Act of 2000 . . . .").  Defendants' interpretation of Section 1433 would further produce the absurd result that a married, U.S. citizen legal parent who is not a gestational mother or a genetically-related parent could not convey citizenship to their child when (1) they have not adopted a child that is already legally their own; and (2) the child cannot be legitimated, because he or she was

born in wedlock and therefore is already legitimate.  This outcome directly conflicts with Congress's purpose in enacting the Child Citizenship Act, which was to ease (not further restrict) access to U.S. citizenship for non-biological children.  *See* H.R. Rep. No. 106-852, at 4 (2000); *see also Child Citizenship Act of 2000*, 162 Cong. Rec. H7777 (2000) (statement of Rep. Delahunt) (explaining that the adoption provisions of the act were a long time coming for those "who fe[lt] deeply that their [non-biological, adopted] children who were born overseas have been treated differently, as if they were less American than are children who were born in the United States").  Although these statements do not speak directly to ART, the intentions surrounding the adoption provisions are instructive.  It is inconceivable to think that Congress would make broad amendments to the INA aimed at cutting red-tape and promoting children's interests while intentionally (and without stating so) limiting the definition of "child" to exclude children who do not share a biological relationship with one of their married legal parents.

Plaintiffs have thus sufficiently pled that USCIS's interpretation of Section 1433 is patently unreasonable and contrary to the law, in violation of the APA.  *See* Compl. ¶¶ 37-41, 49-51, 77-101.

### 3.    Defendants' interpretations of the INA are not entitled to deference.

Neither the FAM nor the Policy Manual's interpretations of the INA are entitled to any type of deference.  Defendants contend that the FAM should be entitled to the low deferential bar set forth in *Skidmore v. Swift & Co.*, which provides that an agency's interpretation "may merit some deference whatever its form, given the 'specialized experience and broader investigations and information' available to the agencies."  *United States v. Mead Corp.*, 533 U.S. 218, 220 (2001) (quoting *Skidmore*, 323 U.S. 134, 139 (1944)).  But, an interpretation is only "eligible to claim respect according to its persuasiveness."  *Id*. at 218.  Likewise, Defendants contend that

USCIS's determination should be entitled to deference under *Chevron* because decisions made by the BIA are entitled to deference.  Defs.' Mem. at 20.

Here, DoS's decision is not entitled deference:  its blatant disregard of the plain language of the INA, the INA's structure, and Congress's intent in enacting the INA is entirely unpersuasive.  This Court has previously joined other courts in declining to defer to the FAM's erroneous interpretation of Section 1401, and should do so again here.  *See Sabra as next friend of Baby M.*, 2020 WL 1643676 at *19-20 ("The State Department's interpretation of the relevant INA provisions lacks the 'power to persuade' under *Skidmore*'s less deferential standard because the plain language of 8 U.S.C. § 1401 does not require proof of a 'biological relationship' between the child born abroad to married U.S. citizen parents."); *see also Scales*, 232 F.3d at 1165-66 (finding FAM did not "warrant Chevron-style deference"); *Farrell*, 315 F. Supp. 3d at 67 (refusing to grant the FAM *Chevron* deference and emphasizing that "interpretations contained in policy statements, agency manuals, and enforcement guidelines, all of which lack the force of law[,] do not warrant *Chevron*-style deference" (quoting *Christensen v. Harris Cty.*, 529 U.S. 576, 587  (2000))).

Likewise, the Court should not defer to USCIS's determination.  USCIS relied on the policies set forth in its Policy Manual, a document that is not entitled to *Chevron* deference, in order to deny L.'s citizenship.  *See Jaen*, 899 F.3d at 187 n.4 (explaining that the Policy Manual and the FAM are "not entitled to *Chevron* deference from our Court").  Defendants also rely on BIA decisions as the basis for USCIS's decision, arguing that the BIA decisions are entitled to

28

*Chevron* deference.[14]   Even if these decisions supported Defendants' interpretation of the definition of "child" under Section 1433—which, as explained above, they do not—deference to BIA determinations are not appropriate here.   *Chevron* deference is only accorded to the BIA when statutory terms are ambiguous, *Negusie v. Holder*, 555 U.S. 511, 517 (2009), which is not the case here.[15]

### 4.   Public policy and the INA's legislative purpose confirms that Defendants acted unreasonably and not in accordance with the law.

Defendants argue, without support, that Congress "clearly did not intend to freely confer citizenship any time it would facilitate family unity." Defs.' Mem. at 21.  The United States has a long history of relying on legal parentage to determine whether a child is eligible for derivative citizenship.  *See, e.g.*, *Guyer v. Smith*, 22 Md. 239, 249 (1864) (finding that children born out of wedlock were legally *nullius filii*—or, "sons of nobody"—and therefore did not fall within the citizenship act); *see also* Kerry Abrams & R. Kent Piacenti, *Immigration's Family Values*, 100 Va. L. Rev. 629, 657 (2014) (under "nineteenth century . . . citizenship laws," "the children acquiring citizenship at birth had to be legitimate children," since illegitimate children had no legal relationship to their unwed biological parents).   The history of the INA confirms that marriage (not biology) is often the touchstone of parent-child transmission of citizenship.  *See* Kristin A. Collins, *Illegitimate Borders: Jus Sanguinis Citizenship and the Legal Construction of*

---

[14] As Defendants correctly acknowledge, this case does not arise from a BIA decision, nor is BIA as a party. Defs.' Mem. at 2-3.  For these reasons, deference to the BIA decisions cited by Defendants is inappropriate.

[15] Even if the term "child" were ambiguous, the BIA has not addressed the particular issue in question:  whether Section 1101(c)(1) limits the definition of "child" to only children with a biological relationship to their parent.  This is a separate question of law that the court would consider *de novo*.  *Nebraska, Dep't of Health & Human Servs. v. U.S. Dep't of Health & Human Servs.*, 340 F. Supp. 2d 1, 11 (D.D.C. 2004) (explaining that when an agency's finding concerns a purely legal question, the court reviews the finding *de novo*).

*Family, Race, and Nation*, 123 Yale L.J. 2134, 2196-99 (2014) (citing historical sources and explaining that "the [Nationality Act of 1940] maintained marriage as the key to father-child citizenship transmission in most instances"). And, as USCIS makes clear in its Policy Manual, "[t]he Immigration and Nationality Act . . . was intended to keep families together and [is] generally construed in favor of family unity and the acceptance of responsibility by family members, despite biological relationships or lack thereof." Compl. ¶ 107 (citing 12 USCIS Policy Manual at pt. H, ch. 3, n. 14); *Solis-Espinoza v. Gonzales*, 401 F.3d 1090, 1093-94 (9th Cir. 2005) (rejecting the biological relationship requirement and reasoning that "[p]ublic policy supports recognition and maintenance of a family unit").

Finally, Defendants appear to argue that this Court should ignore the plain language and legislative history of the INA, public policy, and USCIS's written acknowledgment of public policy because Plaintiffs' family could move to the U.S., Calle could seek Legal Permanent Residency status by virtue of her marriage to Fielden, and "if successful, she may then qualify to become a U.S. citizen after residing in the U.S. for three years," and *then* L. could seek citizenship by virtue of her biological relationship to Calle. Defs.' Mem. at 21-22 (citing 8 U.S.C. §§ 1151(b)(2)(A)(i); 1431(a)). Defendants cannot keep disregarding the plain language of the INA in favor of more complex, time-consuming alternatives that deny L. the birthright citizenship to which she is entitled.

## II.    THE COMPLAINT ADEQUATELY ALLEGES THAT DEFENDANTS VIOLATED THE DUE PROCESS CLAUSE.

### A.    Plaintiffs' Complaint Adequately Alleges the Deprivation of Fundamental Rights.

The Due Process Clause of the Fifth Amendment protects American citizens against deprivation of their fundamental rights without due process. U.S. Const. amend. V, § 1.

30

Marriage is a fundamental right, and Plaintiffs have alleged that they were denied the benefits of Fielden's marriage to Calle when DoS and USCIS required a biological relationship to acquire citizenship from a U.S. citizen parent who was married at the time of birth. *Obergefell v. Hodges*, 135 S. Ct. 2584, 2599 (2015); *Blixt* Tr. at 42-43 (denying motion to dismiss and holding plaintiffs stated a claim for violation of the Due Process Clause where DoS denied the non-biological mother the full benefits of her same-sex marriage); Compl. ¶ 52.  Plaintiffs also allege deprivation of the rights to family, privacy, integrity, association, security in parent-child bonds, and autonomy to make personal reproductive decisions, all of which are integrally related to the fundamental right to marriage.  Compl. ¶¶ 139, 150.

Defendants' only response is to create a straw man, arguing for dismissal of a substantive due process claim that Plaintiffs do not allege.  Defendants contend that there is "no fundamental constitutional right to citizenship with respect to [children born abroad]" and spend pages arguing why this should lead to dismissal.  *See* Defs.' Mem. at 22-25.  But Plaintiffs do not allege a "constitutional right to confer or acquire U.S. citizenship when a child is born abroad." *Id*. at 22.  What Plaintiffs actually plead is that Defendants' conduct violated:  (1) Fielden's fundamental rights of marriage, Compl. ¶ 52; (2) Fielden and L.'s "protected liberty interest in their family, privacy, integrity, and association, including the right to security in their parent-child bonds," *id.* ¶¶ 139, 150; (3) Fielden's "right to make personal reproductive decisions," *id.* ¶¶ 139, 150; and (4) the right of Fielden as a U.S. citizen parent to create and raise a family in which she confers birthright citizenship upon *both* of her child born abroad, not just one.  *Id.* ¶¶ 139-40, 150, 153; *id.* ¶¶ 52, 71, 153 (citing *Obergefell,* 135 S. Ct. at 2599 (finding that excluding same-sex couples from the protections of marriage would hinder a state's interest in childrearing, procreation, and education)); *see also Pavan v. Smith*, 137 S. Ct. 2075, 2078 (2017)

(holding the statute denied same-sex couples the "constellation of benefits" linked to marriage, and was unconstitutional to the extent it treated them differently than opposite-sex couples). Defendants do not make a single argument about *these* fundamental rights or explain why they should be dismissed (and they would be barred from so arguing for the first time on reply). Thus, the Motion to Dismiss fails entirely as to Plaintiffs' substantive due process claims.

Same-sex couples and their children are due the "constellation of benefits" tied to marriage, and the government is prevented from imposing undue restrictions on those fundamental rights. *Obergefell*, 135 S. Ct. at 2601-02; *Pavan*, 137 S. Ct. at 2078 (holding as unconstitutional a law precluding a same-sex couple from being listed as two parents on their child's birth certificate). In *Obergefell*, the Supreme Court made clear that infringing upon the rights of same-sex couples to marriage and family inflicts long-lasting harm and interferes with their fundamental rights. *Obergefell*, 135 S. Ct. at 2604. This Court agreed in *Blixt* and should deny Defendants' Motion to Dismiss on the same grounds. *Blixt* Tr. at 42-43 (explaining that the fundamental right to marriage envelops same-sex parents' right to be recognized as parents, "regardless of a biological connection").[16]

Defendants' interpretations effectively prescribe an ultimatum to certain same-sex couples, which denies them of their rights: either the U.S. citizen parent must gestate or contribute genetic material to the child—regardless of health risks to the parent or child,

---

[16] Parent-child relationships, including those of same-sex spouses and their children, are "inviolable except for the most compelling reasons." *Jordan v. Jackson*, 14 F.3d 333, 343 (4th Cir. 1994) (citing *Duchesne v. Sugarman*, 566 F.2d 817, 825 (2d Cir. 1977) (finding that children have cognizable interests in family unity and emotional family bonds)). Furthermore, infringing on parent-child relationships creates cognizable, constitutional harms. *Stanley v. Illinois*, 405 U.S. 645, 647-48 (1972) (citing *Meyer v. Nebraska*, 262 U.S. 390, 399 (1923) (explaining that a family unit's integrity is protected under the Due Process Clause of the Fourteenth Amendment)).

financial expense, emotional expense, personal preference, or even impossibility—or, the child

will not be eligible to obtain citizenship through birthright or naturalization.  The Complaint

sufficiently alleges that Defendants' requirement that a child evidence either a biological or

gestational relationship with their married, U.S. citizen parent to obtain birthright citizenship or,

alternatively, naturalization, impermissibly interferes with Plaintiffs' protected liberty interests in

marriage, family, privacy, integrity, association, security in their parent-child bonds, and

personal reproductive decision-making.  *Id.* ¶¶ 150, 153 (explaining that "[t]he ability to pass

citizenship to one's child is an important benefit of marriage," which is a "central part of the

liberty protected by the Due Process Clause" (quoting *Obergefell*, 135 S. Ct. at 2600-01)).

> ### B. The Complaint Sufficiently Alleges a Plausible Claim That Defendants' Actions Are Not Narrowly Tailored to Achieve a Compelling Government Interest.

Because Defendants mischaracterize the constitutional rights that Plaintiffs allege, their

subsequent arguments applying a rational basis test to the Complaint's due process claims are

equally misplaced.  Defs.' Mem. at 25.  Where fundamental rights are at stake, as here,

Defendants bear the burden of proving their actions were narrowly tailored to achieve a

compelling government interest (not just rationally related to a legitimate purpose).  *Heller v.*

*District of Columbia*, 670 F.3d 1244, 1256 (D.C. Cir. 2011) (citing *Citizens United v. FEC*, 558

U.S. 310 (2010)).  The government may not infringe upon the fundamental liberty interests of

U.S. citizens "*at all*, no matter what process is provided, unless the infringement is narrowly

tailored to serve a compelling state interest."  *Washington v. Glucksberg*, 521 U.S. 702, 720-21

(1997) (quoting *Reno v. Flores*, 507 U.S. 292, 302 (1993) (emphasis in original)).  Defendants

thus bear the burden of demonstrating that their interpretation and application of the INA, in

accordance with the FAM and the USCIS Policy Manual's biological relationship requirement, are narrowly tailored to achieve a compelling government interest.

Defendants certainly cannot—and have not—overcome that burden at the motion to dismiss stage. *Molina-Aviles v. District of Columbia*, 824 F. Supp. 2d 4, 10-11 (D.D.C. 2011) (denying motion to dismiss because plaintiffs sufficiently alleged a substantive due process claim by describing defendants' use of false evidence against them). Nothing in Defendants' motion suggests any different result here. For starters, Defendants misstate the constitutional claim that Plaintiffs allege. *See supra* Section II.A. Thus, their argument about applying the rational basis test, Defs.' Mem. at 25, makes no sense; they are arguing for application of a test to a claim that was not made, while ignoring the test applicable to the due process claims that Plaintiffs actually assert. The correct test is whether Defendants have narrowly tailored their actions to serve a compelling state interest. *Washington*, 521 U.S. at 720-21. And in any event, the question at this stage is not whether Defendants have met a strict scrutiny or rational basis test; it is simply whether the Complaint contains sufficient allegations to pass muster under Rule 12(b)(6).

Of course it does. The Complaint plausibly alleges that Defendants' actions—refusing to issue a CRBA and Certificate of Citizenship based on policies requiring a biological parent-child relationship—significantly restrict Fielden and L.'s liberty interests. Compl. ¶¶ 102-04. Fielden and L. also plausibly allege that Defendants' action denied them the "constellation of benefits" associated with marriage, *id.* ¶ 153 (quoting *Obergefell*, 135 S. Ct. at 2600-01), and that there is no rational, legitimate, or substantial government interest served either by denying L. citizenship based on the sex or sexual orientation of Fielden or by denying Fielden the right to confer citizenship on her child born abroad during her marriage, based on her sex or sexual orientation. *Id.* ¶¶ 144, 155. Accordingly, Plaintiffs undoubtedly have made sufficiently plausible allegations

in the Complaint about the violation of substantive due process rights to survive Defendants' Motion to Dismiss.

Moreover, even the arguments that Defendants make about the rational basis test are wrong. Defendants attempt to argue that their actions were rationally related to a legitimate purpose because "ensuring reliable proof of a biological relationship between the potential citizen and its citizen parent" is itself "an important governmental objective."[17] Defs.' Mem. at 25 (quoting *Miller v. Albright*, 523 U.S. 420, 436 (1998); citing *Nguyen v. I.N.S.*, 533 U.S. 53, 62 (2001)). Both cases cited by Defendants are inapposite. *Nyugen* and *Miller* consider the role of establishing paternity in cases involving unwed fathers, under INA Section 1409, which is specific to children born *out of* wedlock who must demonstrate a biological parent-child relationship.[18] *Nyugen*, 533 U.S. at 53; *Miller*, 523 U.S. at 459. By contrast, Fielden and Calle were married when L. was born, and she was thus born in wedlock. Compl. ¶ 57. Defendants' authority confirms that children born in wedlock are treated differently under the INA than children born out of wedlock, explaining that "the joint conduct of a citizen and an alien that results in conception is not sufficient" to confer citizenship, but "[i]f the two parties engage in a

---

[17] Defendants have never alleged any fraud on behalf of Fielden, L., or Calle, and acknowledge their legal (parent-child and marital) relationships. *See* Defs.' Mem. at 1, 8.

[18] Defendants conflate what is required for birthright citizenship (or naturalization) with what is sufficient to prove one meets those requirements, arguing that "DNA testing . . . is a powerful way to address concerns of fraud." Defs.' Mem. at 17. This case is not about whether DNA testing can or should be used to demonstrate genetic relatedness for some applicants. *Cf. Sabra as next friend of Baby M.*, 2020 WL 1643676, at *20 (considering DNA testing where DoS questioned the existence and identity of a baby who did not appear in-person and where the mother claimed to have birthed the baby but her age suggested that was unlikely). It is, instead, about Defendants' requiring biological relatedness as a *prerequisite* for transmitting citizenship in all circumstances for children born in wedlock, separate and apart from methods used to *verify* applications when fraud is suspected.

second joint act—if they agree to marry one another—*citizenship will follow*."  *Miller*, 523 U.S. at 433 (emphasis added).

Next, even assuming *arguendo* that preventing citizenship fraud is a legitimate government interest, Defendants do not explain how requiring a biological relationship between a child and her U.S. citizen marital parent is rationally related to preventing fraud.  Indeed, Defendants do not require a biological relationship for all families.  Reviewing documentation and interviewing applicants in person is sufficient to prevent against fraud for adopted children (including step-children), who are not biologically related to their parents.[19]  *See* 8 FAM § 301.10-2(A); 8 FAM § 301.10-3(G).  Defendants' policies also specifically allow gestational mothers who are *legal parents* but who *are not* genetically related to their children to convey citizenship, again relying on documentation and interviews to prevent fraud.  Defs.' Mem. 8 (citing 12 USCIS Policy Manual at pt. H, ch. 5); 8 FAM § 301.4-1(D); Compl. ¶¶ 50-51.

Of course, Sections 1401(g) and 1433 have a built-in fraud prevention mechanism; that is, the element of marriage, which requires documentary proof.  8 FAM § 301.7-5(b)(2); 8 C.F.R. §§ 322.3(b)(ii-iii); Form N-600k Checklist and Instructions.  To require a biological relationship in order to be considered a "parent" or "child" under INA Sections 1401 and 1433, in the name of preventing citizenship fraud, thus is neither narrowly tailored to serve a compelling government interest, nor rationally related to serve a legitimate government interest.

---

[19] Defendants have substantial safeguards in place to prevent against fraud.  They regularly rely on marriage and birth certificates, photographs, sworn statements, proof of presence in the United States (e.g., school transcripts) and in-person interviews to verify births, citizenship, and identity.  *See* 8 FAM §§ 304.1-4; 304.3-4; USCIS, *N-600K, Application for Citizenship and Issuance of Certificate Under Section 322*, *available at* https://www.uscis.gov/n-600k (last updated Apr. 1, 2020) ("Form N-600k Checklist and Instructions").

III.    **THE COMPLAINT ADEQUATELY ALLEGES A VIOLATION OF THE CONSTITUTIONAL GUARANTEE OF EQUAL PROTECTION UNDER THE LAW.**

Defendants argue that the Complaint fails to state an equal protection claim because the FAM and Policy Manual are not discriminatory on their face and the Complaint does not allege facts suggesting that Defendants' discrimination was purposeful.  Defs.' Mem. at 25-29.  The Court should reject these arguments because the Complaint adequately alleges that Defendants were motivated by discriminatory intent and did discriminate against Fielden and L. based on Fielden's sex and sexual orientation.  Compl. ¶¶ 71, 90, 92, 108-10, 161-66, 170-74.

To state an equal protection claim, Plaintiffs must allege that they (1) "w[ere] subjected to disparate treatment"; (2) "by virtue of intentional or purposeful discrimination."  *Stewart v. Gaines*, 370 F. Supp. 2d 293, 296 n.2 (D.D.C. 2005).  Plaintiffs have sufficiently alleged facts supporting a plausible inference that Defendants' denial of L.'s citizenship—and denial of citizenship for other same-sex spouses' children—has purposely created disparate treatment.  Compl. ¶¶ 67-69, 85-90, 107-10, 161-64, 170-72.

A.    **Plaintiffs Sufficiently Allege That They Were Subjected to Disparate Treatment.**

Defendants' biological requirement functions to "identify a subset of state-sanctioned marriages and make them unequal."  *United States v. Windsor*, 570 U.S. 744, 772 (2013).  As alleged in the Complaint, the requirement elevates the marriages of opposite-sex couples, in which parents often have the ability to both be genetically related to their children, and demotes the marriages of same-sex couples, in which most spouses cannot both be genetically related to their children, and procreating often involves complex decision-making about who should be involved, when, and how.  *See, e.g.*, Compl. ¶¶ 59, 64 (explaining that because of reproductive health concerns and fertility challenges, Fielden did not carry L. and is not

genetically related to L., but later, she was able to carry and be genetically related to M.). Defendants have identified the reproductive limitations of same-sex spouses and relied on those limitations to treat them differently than opposite-sex spouses. *See, e.g.*, *id.* ¶ 89; *id.* at Ex. 12 (likening Fielden to a step-parent).  In fact, the FAM defines being born "in wedlock" to require that the child's *biological parents* were married to each other at the time of the birth of the child."  Compl. ¶ 45 (citing 8 FAM § 304.1-2(c) (emphasis added)).  Defendants also applied Section 1409 (for children born *out of* wedlock) and Interpretation 309.1(b)(3) to L., who was born during her mothers' marriage, and was thus born *in wedlock*.  *See, e.g.*, Compl. ¶ 68; *id.* at Ex. 4 (DoS applying INA Section 1409, for children born *out of* wedlock, to L.); *id.* at Exs. 7, 8, 10 (USCIS applying Interpretation 309.1(b)(3) to L.).  Therefore, the Complaint adequately alleges that Fielden and L. were subject to disparate treatment by Defendants.

Notably, Defendants do not argue that USCIS applies the biological relationship requirement equally to same- and opposite-sex couples under Section 1433.  Thus, at least Plaintiffs' equal protection claim against the USCIS Defendants (Count VI) should survive.

The DoS Defendants argue that the biological relationship requirement is applied equally by DoS for two reasons:  (1) the FAM instructs Consular officers to "investigate carefully" when a child is born through ART, Defs.' Mem. at 27-28 (citing 8 FAM § 301.4-1(D)(1)(d)); and (2) a 2016 CRBA Application Form (DS-2029) (hereinafter "2016 Form") asks under the heading "Marital Status of the Parents" whether the U.S. citizen applicant was married to the child's "other" biological parent. Defs.' Mem. at 28-29.  Both arguments are without merit.

*First*, the FAM provides examples of when a Consular officer is expected to investigate further, including when "[t]he child was born through surrogacy or other forms of assisted

38

reproductive technology." *Id.* at 27-28 (citing 8 FAM § 301.4-1(D)(1)(d) (hereinafter, "FAM Example 5")). Same-sex couples generally must rely on surrogacy or ART to procreate, if either spouse is to be biologically related to the child. FAM Example 5 thus treats *every* same-sex couple and their child who applies for a CRBA as individuals who the Consular officer is expected to treat with suspicion and "investigate carefully." *Id.* A same-sex couple is thus more likely to be subject to questions about their child's application than an opposite-sex couple. Indeed, as Plaintiffs allege, "DoS only inquired into the biological relationship between Ms. Fielden and L.F.-C. because L.F.-C.'s parents are both women." Compl. ¶ 69. In addition, opposite-sex couples have long benefitted in the immigration and citizenship context from the principle that "[c]hildren born in wedlock are generally presumed to be the issue of that marriage." *Id.* (citing 8 FAM § 301.4-1(D)(1)(d) (alterations in original)). Plaintiffs thus sufficiently have alleged that "DoS's policy that '[c]hildren born in wedlock are generally presumed to be the issue of that marriage' is only applied to the children of heterosexual married couples." *Id.* ¶ 109.

*Second*, the DoS Defendants point to the 2016 Form to suggest that DoS did not treat Plaintiffs differently than a family with opposite-sex parents. Defs.' Mem. at 28-29. As a preliminary matter, Plaintiffs applied for a CRBA in 2014, so the contents of a 2016 Form are irrelevant, beyond the scope of the pleadings, and should not be considered by this Court. *Weinstein v. Islamic Republic of Iran*, 175 F. Supp. 2d 13, 17 (D.D.C. 2001) (declining to take judicial notice of facts that were not "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned"); *Bradley v. Vox Media, Inc.*, 320 F. Supp. 3d 178, 182 (D.D.C. 2018) (declining to take judicial notice of facts that were not "verifiable with certainty"). Plaintiffs do not allege that they applied for a CRBA using a form

that included a question about Fielden being married to the "other biological parent," and it cannot be "accurately and readily determined" from the 2016 Form whether Fielden and L. received this form or a form with a similar question when applying for a CRBA in Madrid, in 2014.  Fed. R. Evid. 201(b)(2).

Even if the 2016 Form were considered, it would not support the DoS Defendants' contention that they apply the biological relationship requirement equally.  The 2016 Form asks for the sex of each parent and, under the heading "Marital Status of the Parents," asks whether the U.S. citizen applicant was married to the child's "other" biological parent.[20]  Notably, the 2016 Form does not ask whether there is a biological relationship between the U.S. citizen parent and child, or whether the child was conceived via ART.  The DoS Defendants offer no explanation for how the answer to this question guides DoS officials in determining whether to "investigate carefully" when interviewing opposite- or same-sex parents.  Taking Plaintiffs' plausible allegations as true, as the Court must at this stage, Fielden's sex and same-sex marriage led the Consular official to believe that Fielden and Calle used ART to procreate, and thus questioned the circumstances of L.'s birth, in a manner that would not have occurred but for the fact that Fielden and Calle are same-sex parents.  Compl. ¶¶ 69, 109-10, 163.  Accordingly, the Court should find that Plaintiffs sufficiently plead that they were subject to disparate treatment.

---

[20] This 2016 Form appears to presume that the applicant is a biological parent, and there are no instructions as to how a legal parent who is not biologically related to their child should answer this question when she is married to the *only* biological parent.

**B.**     **Plaintiffs Sufficiently Allege That Defendants Acted With Discriminatory Intent.**

Plaintiffs also have adequately pled that Defendants acted with a discriminatory purpose. Plaintiffs need not prove that Defendants' only purpose was discriminatory, but rather that it was a "motivating factor." *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 265-66 (1977).  Because direct evidence of discriminatory intent is rare, courts look to circumstantial evidence, including:  (1) whether one class is impacted more than another; (2) the historical background; (3) the events leading up to the challenged decision; (4) "substantive departures" from factors normally considered in reaching a decision; and (5) the administrative history of a decision.  *Kingman Park Civic Ass'n v. Gray*, 27 F. Supp. 3d 171, 184 (D.D.C. 2014).  When viewed in the light most favorable to Plaintiffs at this stage, the conduct of both DoS and USCIS plausibly support an inference that Defendants' biological relationship requirement—and related refusal to recognize the parent-child relationship between Fielden and L. for purposes of the INA—was motivated by discriminatory intent.  *See* Compl. ¶¶ 69, 109, 161-66, 170-74.

Here, nearly all same-sex, married parents are impacted by Defendants' policies, while only some opposite-sex married parents could be impacted.  For many same-sex couples, it is impossible for both partners to contribute genetic material to their children.  As stated above, some opposite-sex couples use ART to procreate, but *most* same-sex couples who have children must rely on ART to procreate.  Defendants appear to argue that because some families are comprised of two mothers, both of whom are biologically related to their child (with one mom providing the egg and the other mom providing the womb), the biological relationship requirement has no discriminatory purpose.  Defs.' Mem. at 26.  But Defendants cannot escape the discriminatory intent behind their policy simply by pointing to the few same-sex partners

who do not fall within the purview of those policies.[21]  Defendants similarly argue that "if a child born abroad has a biological relationship with a U.S. citizen parent, that child may qualify for citizenship . . . regardless of whether her parents are a same-sex or opposite-sex couple."  Defs.' Mem. at 27.  Again, Defendants dance around the issue of requiring a biological relationship between Fielden and L., which discriminates on the basis of sex and sexual orientation, by providing examples of hypothetical other parents and children who would qualify for citizenship based on biology.  These distractions do nothing to change that the Complaint sufficiently alleges that same-sex parents are almost always impacted by the policies at issue, while opposite-sex parents rarely could be impacted.  Nothing else is required to survive a motion to dismiss. *See Yick Wo v. Hopkins*, 118 U.S. 356 (1886) (inferring discriminatory intent where a facially neutral law was used to deny two hundred permit applications from Chinese applicants, but grant most applications from non-Chinese applicants, despite the Chinese applicants complying with "every requisite *deemed by the law*" (emphasis added)).

Defendants' conduct further suggests a plausible inference of discriminatory intent.  DoS, in its denial letter, stated that it was enclosing a copy of the section of the law that supported its decision, and attached Section 1409, not Section 1401.  *Id.* ¶ 68; *id.* at Ex. 4.  As discussed above, Section 1409 applies only to unmarried parents, and is inapplicable here.  On at least two other occasions, DoS has purportedly applied Section 1409 (instead of Section 1401) when assessing whether children born abroad to married same sex couples are entitled to citizenship. *See* Compl. ¶¶ 57-58, *Blixt* (Jan. 22, 2018), ECF No. 1; Compl. ¶¶ 4-5, *Dvash-Banks v. DoS*,

_____

[21] Furthermore, while some two-mom families have the financial, medical, and biological ability to both share a biological relationship to their child, Defendants' policies nevertheless restrict their procreative options, "impos[ing] restrictions and disabilities" on these same-sex couples' valid marriages, as if "their marriage is less worthy than the marriages of others."  *Windsor*, 570 U.S. at 768, 775.

No. 2:18-cv-00523-JFW-JCx (C.D. Cal. Jan. 22, 2018), ECF No. 1.  These circumstances give rise to an inference that children born abroad to married same-sex couples are routinely treated by DoS as if they were born out of wedlock.  Compl. ¶¶ 68, 161, 164; *id* at Ex. 4.

USCIS, on the other hand, treated Fielden as the "step-parent" of L., characterizing their relationship not as mother and daughter based on their relationship to each other, but as "step-parent" and "step-child" based on Fielden's marriage to Calle, L.'s biological mother.[22] *Id.* ¶ 89.  Fielden is listed on L.'s birth certificate and has been L.'s legal mother since birth. *Id.* ¶ 60.  USCIS's interpretation minimizes and denigrates Fielden's relationship with L., and falls squarely within the "long history of disapproval" of same-sex relationships that provides the basis for equal protection claims.  *See Obergefell*, 135 S. Ct. at 2604.

Fielden and L. have adequately alleged facts to support a plausible inference that Defendants' denial of L.'s citizenship was motivated by discriminatory purpose.  The biological relationship requirement disproportionately impacts same-sex parents, and Defendants' explanations demonstrate their uncompromising attempts to label Plaintiffs' mother-daughter relationship in any way that could preclude L. from enjoying the citizenship she acquired at birth.

---

[22] Step-parents generally do not have legal rights over their step-children, no matter how involved they are in those children's lives, unless a non-step-parent's rights have been terminated.  USCIS likening Fielden to L.'s step-parent ignores that she is a legal parent, and has been since the time of L.'s birth.  Furthermore, step-parents can petition to adopt their step-children, which provides them with an avenue to become a legal parent *and* convey citizenship under Section 1433.  *See* 8 U.S.C. § 1101(c)(1).  It is nonsensical that Defendants simultaneously (1) acknowledge that Fielden is L.'s legal parent; (2) treat Fielden as a step-parent; and (3) argue that Fielden is precluded from passing citizenship to one of her two daughters.

## <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendants'

Motion to Dismiss.


Dated: June 12, 2020                                        Respectfully submitted,

                                                           By: */s/ Adam K. Levin*
                                                           Adam K. Levin (DC Bar No. 460362)
                                                           Alicia J. Paller (DC Bar No. 1035545)
                                                           Kaitlyn A. Golden (DC Bar No. 1034214)
                                                           Carina I. Tenaglia (DC Bar No. 1671269)
                                                           HOGAN LOVELLS US LLP
                                                           555 Thirteenth Street NW
                                                           Washington, DC 20004
                                                           T. (202) 637-5600
                                                           F. (202) 637-5910
                                                           adam.levin@hoganlovells.com
                                                           alicia.paller@hoganlovells.com
                                                           kaitlyn.golden@hoganlovells.com
                                                           carina.tenaglia@hoganlovells.com

                                                           *Counsel for Plaintiffs Laura Fielden and*
                                                           *L.F.-C.*

## REQUEST FOR HEARING

Pursuant to Local Rule 7(f), Plaintiffs respectfully request an oral hearing on Defendants'

Motion to Dismiss.

Dated: June 12, 2020                                    Respectfully submitted,

                                                       By: */s/ Adam K. Levin*
                                                       Adam K. Levin (DC Bar No. 460362)
                                                       Alicia J. Paller (DC Bar No. 1035545)
                                                       Kaitlyn A. Golden (DC Bar No. 1034214)
                                                       Carina I. Tenaglia (DC Bar No. 1671269)
                                                       HOGAN LOVELLS US LLP
                                                       555 Thirteenth Street NW
                                                       Washington, DC 20004
                                                       T. (202) 637-5600
                                                       F. (202) 637-5910
                                                       adam.levin@hoganlovells.com
                                                       alicia.paller@hoganlovells.com
                                                       kaitlyn.golden@hoganlovells.com
                                                       carina.tenaglia@hoganlovells.com

                                                       *Counsel for Plaintiffs Laura Fielden and*
                                                       *L.F.-C.*