IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| LAURA FIELDEN, individually and on behalf of her minor child, L.F.-C., <br><br> Plaintiffs, <br><br> v. <br><br> MICHAEL R. POMPEO, in his official capacity as Secretary of State, *et al.*, <br><br> Defendants. | Civ. No. 1:20-cv-00409-EGS |

**PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR
<u>PARTIAL SUMMARY JUDGMENT</u>**

**INTRODUCTION**

Defendants' Opposition makes clear that the salient facts here are undisputed.  Defendants admit that Plaintiff Laura Fielden ("Fielden") is the legal parent of Plaintiff L.F.-C. ("L."). Defendants admit that L. was born in Spain during the legally valid marriage of Fielden and her wife, María Calle Suarez ("Calle").  And Defendants admit that Fielden meets the residency requirements required to transmit citizenship to L. under both Sections 1401(g) and 1433 of the Immigration and Nationality Act ("INA").  As such, the only question before this Court is a matter of law:  whether L. is entitled to birthright citizenship under the INA.  She plainly is.

Defendants insist otherwise, based on the biological relationship requirement that they have read into the INA.  Defendants have on three occasions in this litigation attempted to explain the basis for the biological relationship requirement.  The only support they can muster for their labored reading are supposed "long-standing principles" regarding shared blood between parents and children and a handful of dictionary definitions for the terms "born" and "of."  But these "principles" are not rooted in the statutory text of the INA, the Constitution, or any other statute. Nor do dictionary definitions move the needle:  dictionary definitions cannot substitute for a reading of the plain language of the statutory text.

The plain language of the INA is clear:  a biological relationship is not required for a parent to transmit citizenship to a child born abroad in wedlock.  Since Plaintiffs filed their Motion for Summary Judgment, the Ninth Circuit affirmed that Section 1401(g) "does not require a biological relationship between a child and the citizen parent through whom citizenship is claimed."  Mem. at 2, *Dvash-Banks v. Pompeo*, No. 19-55517 (9th Cir. Oct. 9, 2020), ECF No. 56-1.  This decision joins three other courts (including this Court) that have reached the same conclusion since Plaintiffs filed their Complaint.  *See Mize v. Pompeo*, No. 19-CV-03331, 2020 WL 5059253, at *14 (N.D. Ga. Aug. 27, 2020); *Kiviti v. Pompeo*, Civ. Action No. TDC-19-2665, 2020 WL

3268221, at *11 (D. Md. June 17, 2020), *appeal docketed*, No. 20-1882 (4th Cir. Aug. 14, 2020)[1]; *Sabra, as next friend of Baby M. v. Pompeo*, 453 F. Supp. 3d 291, 320 (D.D.C. 2020) (Sullivan, J.). Plaintiffs are not aware of any case holding otherwise. Nor can Defendants plausibly argue that Section 1433 of the INA requires a biological relationship. Like Section 1401, the text of the statute makes no reference to a biological parent-child relationship. L. is therefore a citizen under both Sections of the INA.

Defendants' other arguments are equally meritless. Relief under the Administrative Procedure Act ("APA") is appropriate, because no adequate alternative remedy exists. Requiring Plaintiffs to pursue relief under 8 U.S.C. § 1503 would impose a tremendous burden on the Fielden-Calle family. Nor is there any basis for this Court to defer to Defendants' erroneous interpretations enshrined in the Foreign Affairs Manual (the "FAM") or the USCIS Policy Manual.

This Court should find that Defendants' interpretation of the requirements for Sections 1401 and 1433 are unquestionably wrong as a matter of law, and enter summary judgment for Plaintiffs on their APA claims.

## ARGUMENT

**I.    SECTION 1503 DOES NOT PROVIDE AN ADEQUATE ALTERNATIVE LEGAL REMEDY.**

Judicial review of Plaintiffs' APA claims is proper because no adequate alternative legal remedy exists. As Plaintiffs previously explained, Defendants' repeated suggestion that alternative legal relief exists under 8 U.S.C. § 1503, Dkt. 23 at 5, is meritless and contrary to the case law in this Circuit. *See* Dkt. 15 at 12–17. Seeking relief under Section 1503 is particularly inappropriate because it would impose a tremendous burden on the Fielden-Calle family, as L. would have to

---

[1] Defendants in *Kiviti v. Pompeo* initially appealed the decision to the Fourth Circuit, *see Kiviti v. Pompeo*, No. 20-1882 (4th Cir. Aug. 14, 2020), but moved to dismiss the appeal prior to any briefing, *see id.* at Appellants' Unopposed Mot. to Dismiss Appeal (Oct. 26, 2020), Doc. 13.

3

seek a "certificate of identity"—which the Department of State might not grant when interpreting the same language for a certificate of entry that they erroneously interpreted in denying L. a Consular Report of Birth Abroad—before traveling to the United States, applying for admission at a port of entry, and then filing a citizenship declaration. *Id.* at 14.  In order to pursue those steps, L., a six-year old, and at least one of her mothers, would have to uproot their lives in Spain and reside in the United States for an unknown amount of time while waiting for a decision. *Id.*  This is not the purpose of Section 1503.

Defendants suggest that recent case law involving plaintiffs seeking citizenship for children born abroad supports their argument that relief must be pursed under Section 1503, instead of the APA. Dkt. 23 at 5–6.  Defendants' argument misses the mark:  Plaintiffs in both *Mize* and *Kiviti* were not similarly-situated to Plaintiffs with respect to the applicability of Section 1503. The *Mize* and *Kiviti* plaintiffs resided in the United States when they filed lawsuits under Section 1503(a). Compl. ¶ 47, *Mize v. Pompeo*, No. 1:19-cv-3331-MLB (N.D. Ga. July 29, 2019), ECF No. 7; Compl. ¶ 14, *Kiviti v. Pompeo*, No. TDC-19-02665 (D. Md. Sept. 12, 2019), ECF No. 1.  Those cases did not involve Sections 1503(b) or 1503(c), and did not present the burdens that the Fielden-Calle family would face if forced to apply for a certificate of identity under Section 1503(b) and apply for admission to the United States and a determination of citizenship under Section 1503(c).

Instead, Plaintiffs are similarly situated to the plaintiffs in *Blixt*, who lived abroad at the time this Court denied the government's motion to dismiss. Tr. of Status Conference at 38:14–43:3, *Blixt v. U.S. Dep't of State*, No. 1:18-cv-00124-EGS (D.D.C. May 21, 2019), ECF No. 38 (Sullivan, J.) ("*Blixt* Tr.").  In *Blixt*, the Department of State argued that a child born of two mothers abroad, one of whom is a biological parent but not a U.S.-citizen, and one of whom is a U.S.-citizen but not a biological parent, should be precluded from bringing an APA claim because

Section 1503 is an adequate remedy. *Id.* at 31:20–32:10. This Court correctly permitted plaintiffs' APA claim to proceed. *Id.* at 43:2–3.

Section 1503 does not provide an adequate alternative legal remedy and thus relief under the APA is appropriate. *See* Dkt. 15 at 12–17.

## II. DEFENDANTS' INTERPRETATION OF THE INA CONTRAVENES THE TEXT OF THE STATUTE.

It is undisputed that the plain text of both Sections 1401 and 1433 of the INA do not require (or even reference) a biological relationship requirement. *See* Dkt. 23 at 6–7. In the absence of an explicit requirement, Defendants argue that the INA nonetheless requires a biological relationship for two reasons: (1) that general principles incorporated into U.S nationality law support the idea that there must be a genetic relationship between the U.S. citizen parent and child to extend citizenship, and (2) that dictionary definitions of "born" and "of" support their interpretation of the INA. *Id.* at 5–7. Both arguments are flatly contradicted by the plain text of the statute.

Defendants' first argument hinges on the Court incorporating the principle of *jus sanguinis*, "citizenship by blood," into the INA. Dkt. 14 at 14–15; Dkt. 23 at 6. But Defendants do not identify any place in the Constitution, INA, or any other federal statute where the principle of *jus sanguinis* has been explicitly adopted in the United States. *See Kiviti*, 2020 WL 3268221, at *12 (noting that there is no place in the Constitution, INA, or federal statute adopting *jus sanguinis*); *Mize*, 2020 WL 5059253, at *16 (internal quotations omitted) (same). Nor can they: "[t]here is not, and never was, any such common-law principle." *Id.* (quoting *United States v. Wong Kim Ark*, 169 U.S. 649, 670 (1898)); *see also Kiviti*, 2020 WL 3268221, at *12 ("[T]here is nothing inconsistent with the constitutional and legal traditions of the United States for Congress to have supplemented *jus soli* birthright citizenship with citizenship at birth for certain children who are

5

born abroad based on parentage at birth, which traditionally has not been limited to biological parents but has included others, such as those who became parents at birth through marriage."); *Sabra as next friend of Baby M*, 453 F. Supp. 3d at 320 ("The historical underpinnings of the FAM do not persuade this Court that Section 1401(c) requires proof of a biological relationship."). This "historical principle" on which Defendants' rely on is inapposite.[2]  *See also* Dkt. 15 at 17–24.

Defendants next argue that dictionary definitions of "born . . . of" support their reading of Section 1401. Dkt. 23 at 6. But as Plaintiffs have explained, selective dictionary definitions are not appropriate substitutes for the meaning of a term or phrase in its statutory context. Dkt. 15 at 19.  Instead, the plain language of the statue makes it abundantly clear that no biological relationship is required. *See* Dkt. 20-1 at 7–10; Dkt. 15 at 17–22.

Defendants' arguments for Section 1433 fare no better. Again, Defendants read a biological relationship requirement into the text where none exists. *See* Dkt. 23 at 7. But as Plaintiffs previously explained, this reading relies on the Board of Immigration Appeals ("BIA") interpretation of "legitimated" child under 8 U.S.C. §§ 1101(b) and 1101(c) to require a biological relationship. Dkt. 15 at 24–27. This interpretation has no bearing on the matter, as legitimation is a process that applies to children born out of wedlock. *See In re Bueno-Almonte*, 21 I. & N. Dec. 1029, 1031–32 (BIA 1997). Defendants do not dispute that L. was born while Fielden and Calle were married, and thus legitimation is inapplicable here. *See* Dkt. 15 at 24–27.

---

[2] Defendants' repeatedly mischaracterize Plaintiffs' statement to USCIS to suggest Plaintiffs' concede this principle. Dkt. 23 at 2, 6. This is patently wrong. Instead, Plaintiffs acknowledged the FAM's statement regarding purported historic principles, but then explained that the FAM was not binding on USCIS, and importantly, that INA Section 1401 "<u>does not require</u> a genetic, gestational, or adoptive relationship between the U.S. citizen legal parent and the child." Dkt. 20-26 at 2. Plaintiffs did not—and do not—concede that this principle is reflected in the INA or any other law of the United States.

Defendants cannot credibly argue that their interpretation of the INA is entitled to any deference. This Court has previously declined to defer to the FAM's erroneous interpretation of Section 1401, and should do so again here. *See Sabra as next friend of Baby M.*, 2020 WL 1643676 at *19–20 ("The State Department's interpretation of the relevant INA provisions lacks the 'power to persuade' under *Skidmore*'s less deferential standard because the plain language of 8 U.S.C. § 1401 does not require proof of a 'biological relationship' between the child born abroad to married U.S. citizen parents." (quoting *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944)); *see* Dkt. 15 at 27–29. And courts have previously found that the USCIS Policy Manual is not entitled to *Chevron* deference. *See, e.g.*, *Jaen v. Sessions*, 899 F.3d 182, 187 n.4 (2d Cir. 2018) (explaining that the Policy Manual and the FAM are "not entitled to *Chevron* deference from [the] Court").

Defendants conclude their Opposition by suggesting that the Fielden-Calle family could move to the United States so that L. can pursue U.S. citizenship through two other avenues, either by becoming a lawful permanent resident ("LPR") "by virtue of her relationship to Fielden" (which would mean treating L. as a "step-child"), or through Calle seeking LPR status by virtue of her marriage to Fielden, residing in the U.S. for three years, becoming a U.S. citizen, and then transmitting that citizenship to L. because they are biologically-related. Opp. at 8; *see also* Dkt. 14-1 at 21–22. This proposal is not an adequate alternative to L.'s birthright citizenship. As a threshold matter, requiring L. to pursue citizenship through either of these means will not convey the benefits and protections of birthright citizenship to which L. is entitled. *See* U.S. Const. art. II, § 1 ("No Person except a natural born Citizen . . . shall be eligible to the Office of President"); 8 U.S.C. § 1451 (providing for the conditions where a naturalized citizen could have their citizenship revoked); *Tiwari v. Mattis*, 363 F. Supp. 3d 1154, 1160 (W.D. Wash. 2019) (challenging Department of Defense policy that made it harder for naturalized service members to

obtain security clearance). And, in any event, Defendants' proposed solutions disregard the plain text of the INA and place a time-consuming, unnecessary burden on Plaintiffs to obtain the citizenship to which L. is entitled.

## **CONCLUSION**

For the reasons set forth above, in Plaintiffs' opening motion, and in Plaintiffs' Opposition to Defendants' Motion to Dismiss, the Court should enter summary judgment as to Plaintiffs' APA claims in their entirety and deny Defendants' Motion to Dismiss on these same issues.

Dated: October 26, 2020                                            Respectfully submitted,

By: */s/ Adam K. Levin*
Adam K. Levin (DC Bar No. 460362)
Alicia J. Paller (DC Bar No. 1035545)
Kaitlyn A. Golden (DC Bar No. 1034214)
HOGAN LOVELLS US LLP
555 Thirteenth Street NW
Washington, DC 20004
T. (202) 637-5600
F. (202) 637-5910
adam.levin@hoganlovells.com
alicia.paller@hoganlovells.com
kaitlyn.golden@hoganlovells.com

*Counsel for Plaintiffs
Laura Fielden and L.F.-C.*